WILLIAM H. ENSIGN et al., Appellants, *v.* MILLS W. BARSE et al., Respondents.

The act of 1882 entitled " an act to amend chapter 229 of the Laws of 1879, entitled ' an act in reference to the collection of taxes in the counties of Chautauqua and Cattaraugus,' and the act amendatory thereof and supplemental thereto " (Chap. 287, Laws of 1882) is not violative of the provision of the state Constitution (art. 3, § 16) which declares no private or local act shall embrace more than one subject and that shall be stated in the title; the subject stated embraces the entire system of collection, including the sale of lands to enforce collection, the conveyances and their force as evidence and muniments of title.

Said act of 1882 is not repugnant to the provision of said constitution (art. 1, § 6), or of the federal Constitution declaring that no person shall be deprived of life, liberty or property without due process of law.

*Howard* v. *Moot* (64 N. Y. 262) distinguished.

The provision of said act (§ 2) declaring that whenever a period of fifteen years shall have elapsed after a conveyance, on a tax sale, of the lands of a non-resident lying in said counties, and the former owner or claimant shall not have entered into possession within that period, the conveyance shall be conclusive evidence that the sale and the proceedings prior thereto were regular, etc., was not intended to and does not cure jurisdictional defects of such a nature as that the legislature could not have dispensed with the statutory requirement, a failure to comply with which constitutes the defects.

The act only raises a conclusive presumption of regularity, leaving the questions of the assessors' jurisdiction and authority unaffected, in points which may not be dispensed with by legislative action.

A defect may be in one sense jurisdictional, as regards the authority of assessors acting under an existing law, and yet not so as it respects the power of the legislature to pass a statute curing the defect.

An omission of the dollar mark in the statement in a tax roll and warrant of the amount of a tax is not a jurisdictional defect.

Where an assessment-roll, made out in 1849, was not signed by the assessors as required by the provisions of the statute then in force (1 R. S., 393, § 26), but the certificate, which was written upon the roll itself and which referred to it as the " above assessment-roll " and as having been the work of the assessors, was signed. *Held*, that the defect was not jurisdictional, and so, not beyond the reach of the act of 1882.

*It seems* that if the certificate had been written on a separate piece of paper and attached to the roll, the conclusion would have been the same.

*Shattuck* v. *Bascom* (105 N. Y. 39) distinguished.

| | |
|---|---|
| 107 | 329 |
| 123 | 80 |
| 123 | 490 |
| 107 | 329 |
| 127 | 79 |
| 107 | 329 |
| 128 | 333 |
| 107 | 329 |
| 131 | 33 |
| 107 | 329 |
| 139 | 136 |
| 107 | 329 |
| 145 | 457 |
| 107 | 329 |
| 159 | 433 |
| 107 | 329 |
| d162 | 377 |
| 162 | 378 |
| 107 | 329 |
| 164 | 264 |

In that part of the certificate which related to the mode of valuation the words "solvent creditor" were written instead of "solvent debtor" *Held*, that this was not a jurisdictional defect.

The assessment was for a county and highway tax, no number of the road district or date of the commissioners' warrant was given. *Held*, it was not requisite that these details should appear on the assessment-roll.

The sale was in 1852. The county treasurer's notice of sale was not delivered to the printers for publication on or before the first day of September as required by the act of 1850 (Chap. 298, Laws of 1850.) The day of sale was the first Tuesday in December; the notice was dated September fifteenth; it was published once in each week for the prescribed ten weeks. *Held*, that the defect was not jurisdictional.

The provision of the act of 1835 (§ 6, Chap. 145, Laws of 1835), which provides that "the real property of non-resident owners improved or occupied by a servant or agent, shall be subject to assessment of highway labor and at the same rate as resident owners," was not intended to take the place of the provisions of the Revised Statutes (1 R. S., 505, § 19 *et seq.*), in reference to the assessment of non-resident lands for highway labor, but simply to provide that lands of a non-resident occupied or improved by him, his agent or servant, should be assessed the same as resident lands, leaving non-resident lands not so occupied or improved to be assessed as provided by the former statute.

The provision of said act of 1850 (Chap. 298, Laws of 1850), repealing certain portions of the Revised Statutes, but declaring that such repeal should not affect "any tax levied or assessed prior to the year 1849, nor any proceeding for the collection thereof," did not have the effect to exclude from collection, by sale of the land, a tax assessed in 1849 upon non-resident land and returned to the comptroller prior to the passage of said act. The act simply changed the future and prospective course of proceeding for the collection of such a tax.

A sale in conformity with the provisions of the new act was accordingly *held* valid.

*Whitney* v. *Thomas* (23 N. Y. 281) distinguished.


(Argued October 17, 1887; decided November 29, 1887.)


Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 7, 1885, which affirmed a judgment in favor of defendants entered upon a verdict directed by the court.

This was an action of ejectment to recover possession of certain lands situate in Cattaraugus county.

The material facts are stated in the opinio

*William F. Cogswell* for appellants. The deed was void. for the reason that notice to redeem the premises from such tax sale was not published in accordance with the terms of the statute. (R. S., chap. 13, part 1, art. 3, tit. 3, § 76, p. 411 ;. *Westbrook* v. *Wiley*, 47 N. Y. 457.) The statute of 1850 was purely prospective, and had no application to lands returned to the comptroller prior to April 10, 1850. (*Whitney* v. *Thomas*, 23 N. Y. 281, 284 ; 1 R. S. Chap. 13, tit. 3, art. 2, part 1, p. 402.) The premises in question were not in 1849· liable to highway tax. (Laws of 1832, Chap. 107, p. 170 ;. Laws of 1835, Chap. 145, p. 163 ; *Heckman* v. *Pinckney*, 81 N. Y. 211.) The sale by the county judge and treasurer being· for the whole tax, of which a part was void, the whole sale is- void. (*People* v. *Hagadorn*, 104 N. Y. 516 ; *Shattuck* v. *Bascom*, 105 id. 39, 40 ; Blackwell on Tax Titles, 161, *n.* 1 ;. *Riverside Co.* v. *Howell*, 113 Ill. 250.) The void highway tax, although very small, was sufficient to vitiate the whole. tax. (*House* v. *Merriam*, 2 Greenl. 375 ; *Wells* v. *Burbank*, 17 N. H. 393 ; *Kimball* v. *Ballard*, 19 Wis. 601 ; *Warner* v.. *Outagamie Co.*, 19 id. 611 ; Blackwell on Tax Titles, 162.)

*E. D. Northrup* for appellants. The sale was void for the· reason that four separate years were blended in one sale. (*Thatcher* v. *Powell*, 6 Wheat. [U. S.] 119 ; *Nat. Ins. Co.* v.. *McKay*, 5 Abb. [N. S.], 445 ; *Beekman* v. *Bigman*, 1 Seld. 366 ; *Westbrook* v. *Wiley*, 47 N. Y. 461 ; *Becker* v. *Holdridge*, 47 How. 429 ; *Merritt* v. *Village of Port Chester*, 71 N. Y. 309 ; *Hassan* v. *City of Rochester*, 67 ld. 528 ; *Register* v. *Bryan*, 2 Hawks, 17 ; *Culver* v. *Hayden*, 1 Vt. 359 ; *McDonald* v. *Gravier*, 9 La. 546 ; *Sharp* v. *Johnson*, 4 Hill, 99 ; *Atkins* v. *Kinnan*, 20 Wend. 241, 249 ; *Newell* v. *Wheeler*, 48 N. Y. 490 ; *Sherwood* v. *Reade*, 7 Hill, 434 ; *Powell* v. *Tuttle*, 3 N. Y. 405.) The sale was void for the· reason that the comptroller failed to publish his notice of redemption in all the public newspapers of this state as required by 1 R. S. [2d ed.], § 76. (*Bunner* v. *Eastman*, 50 Barb. 640 ; *Westbrook* v. *Wiley*, 47 N. Y. 457, 460 ; *In re*

*Douglass*, 46 id. 42; *Doughty* v. *Hope*, 1 id. 79; *Thompson* v. *Burhans*, 61 id. 66; *Varick* v. *Tallmann*, 2 Barb. 113; *Bussy* v. *Leavitt*, 12 Me. 378.) The taxes were void for the reason that neither the valuations of the property nor the taxes themselves, were expressed in dollars and cents as required by the statute. (1 R. S. [3d ed.], 444, § 9, subds. 3, 4, p. 448, § 33; *In re Church of the Holy Sepulchre*, 61 How. R. 315; *Reese* v. *Boese*, 92 N. Y. 632; 18 N. Y. W. Dig. 285; *Dike* v. *Lewis*, 4 Den. 237; 1 R. S. [3d ed.], 445, § 12; id. 348 § 33; *People* v. *Chapin*, 23 N. Y. W. Dig. 48; *Cook* v. *Norton*, 43 Ill. 391.) Also for the reason that that the assessment-roll itself was not signed by the assessors, as the statute then required. (1 R. S. [3d ed.], 447, § 26; *Mygatt* v. *Washburn*, 15 N. Y. 316; *People* v. *Supervisors*, 11 id. 563; *Hinckley* v. *Cooper*, 7 Hun, 371; *Clark* v. *Norton*, 49 N. Y. 246, 248; *Doughty* v. *Hope*, 3 Den. 594; *Moore* v. *Mayor*, etc., 73 N. Y. 238; *Marsh* v. *Brooklyn*, 59 id. 280; *Sharp* v. *Spicer*, 4 Hill, 76, 92; *Com'rs, etc.,* v. *Vanderbilt*, 31 N. Y. 265; *Jackson* v. *De Lancey*, 13 Johns. 539; *Mason* v. *White*, 11 Barb. 187; *Jackson* v. *Striker*, 1 Johns. 97; *Jackson* v. *Rosevelt*, 13 id. 97; *O'Donnell* v. *Lindsey*, 39 Super. Ct., 537; *Merritt* v. *Port Chester*, 71 N. Y. 314; *Cruger* v. *Dougherty*, 43 id. 107; *Bloom* v. *Burdick*, 1 Hill, 130, 141; *Striker* v. *Kelly*, 7 id. 25; 1 Edmond's Statutes at Large, 63; *Coffin* v. *Coffin*, 23 N. Y. 9; *Hoysradt* v. *Kingman*, 22 id. 372; *Bush* v. *Davison*, 16 Wend. 554; *Marsh* v. *Supervisors*, 42 Wis. 502; *Lewis* v. *Lewis*, 11 N. Y. 220, 223; *People* v. *Suffern*, 68 id. 321; *Bissell* v. *Township Spr. Valley*, 29 A. L. J., 154; *Demelt* v. *Leonard*, 19 How. 192; *Yorks* v. *Peck*, 17 id. 192; *Brown* v. *Cook*, 2 id. 40; *Nichols* v. *Fash*, 59 Barb. 283; *Hickox* v. *Tallman*, 38 id. 608; *Greene* v. *Lunt*, 58 Me. 518; *In re Com'rs Amsterdam*, 96 N. Y. 351; *People* v. *Forest*, id. 544; *Mushlitt* v. *Silverman*, 50 id. 360; *Jackson* v. *Estey*, 7 Wend. 151; *O'Donnell* v. *McIntyre*, 22 N. Y. W. Dig. 440; *Thatcher* v. *Powell*, 6 Wheat. 119; *Nat. B'k Chemung* v. *Elmira*, 53 N. Y. 49; *Jewell* v. *Van Steenburgh*, 58 id. 90, 91; *Atkins* v. *Kinnan*, 20 Wend. 449;

*Davison* v. *Gill*, 1 East, 64; *Bellinger* v. *Gray*, 51 N. Y. 610; Code Civil Pro. § 934; *Clark* v. *Crane*, 5 Mich. 154, 155.) In the case at bar the certificate of the assessors to said assessment-roll of 1849 is defective, for the reason that the statute (1 R. S. [3d ed.], 447, § 26), is evaded and the words "solvent creditor" substituted for the words "solvent debtor," in respect to the appraisal of the real estate. (*People* v. *Weaver*, 67 How. 477; *People* v. *Fowler*, 55 N.Y. 252; *Wheeler* v. *Mills*, 40 Barb. 644; *Van Rensselaer* v. *Whitbeck*, 3 Seld. 517; *Westfall* v. *Preston*, 49 N. Y. 342; *Barto* v. *Cooper*, 22 Hun, 253; *N. B'k Chemung* v. *Elmira*, 6 Lans. 116; *Whitney* v. *Thomas*, 23 N. Y. 284; *Beach* v. *Hayes*, 58 How. 17; *Bellinger* v. *Gray*, 51 N. Y. 610.) Also for the reason that the said assessors' certificate attached to said assessment-roll is dated August 4, 1849. (1 R. S. [3d ed.], 447, § 26; *People* v. *McCreery*, 34 Cal. 432; *Hickox* v. *Tallman*, 38 Barb. 612; *Mygatt* v. *Washburn*, 15 N. Y. 318; *Culver* v. *Hayden*, 1 Vt. 359; *Sharp* v. *Johnson*, 4 Hill, 99; *Cowen* v. *Kinnan*, 20 Wend. 249; *McDonough* v. *Gravier*, 9 La. 546; *Register* v. *Bryan*, 2 Hawks, 17.) The highway tax in said assessment-roll is wholly void. No number of road district or date of commissioner's warrant is given, or anything to show jurisdiction to levy the tax. (Blackwell on Tax Titles, 160, 161; *Heyden* v. *Foster*, 12 Pick. 402; *In re Willis*, 30 Hun. 610; *Hall* v. *Shaw*, 1 Me. 339; *Johnson* v. *Elwood*, 53 N. Y. 436; 1 Whart. Ev., § 639; 18 Week. Dig. 285; *Hartwell* v. *Root*, 19 Johns. 344; *Wing* v. *Hall*, 47 Vt. 182; *Stevens* v. *Palmer*, 10 Bosw. 60; *Bunkendorf* v. *Taylor's Lessee*, 4 Pet. 349.) The treasurer's notice of the tax sales of 1852 being dated September 15, 1852, its date is *prima facie* evidence that it was executed on that day, and it was not sufficient. (Laws of 1850, chap. 298, §§ 47, 48; *Parker* v. *Overman*, 18 How. [U. S.], 143; *Hardmann* v. *Bowen*, 39 N. Y. 199; *Clark* v. *Crane*, 5 Mich. 154; Blackw. on Tax Titles, 268.) No presumptions created by statute can override it. (*Newell* v. *Wheeler*, 48 N. Y. 491; *Robinson* v. *Wheeler*, 25 id. 260; *Jarvis* v. *Silliman*, 21 Wis. 599; Abb. Trial Ev. 704; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296;

*People* v. *Snyder*, 41 id. 397.) Chapter 298, Laws of 1850, repealed all existing statutes relating to sales of lands for arrears of taxes, and established an entirely new and independent system therefor, and said chapter was wholly prospective in its provisions. (*Whitney* v. *Thomas*, 23 N. Y. 284; *Mayor, etc.,* v. *Buell*, 19 N. Y. Week. Dig. 446.) Chapter 229, Laws of 1879, page 304, entitled "An act in reference to the collection of taxes in the counties of Chautauqua and Cattaraugas," is, so far as relates to the last sentence of the thirty-second section thereof, unconstitutional. (*People* v. *Hill*, 35 N. Y. 451; *In re Sackett, Douglass and De Graw Sts.*, 74 id. 103; *In re Van Antwerp*, 56 id. 201; *People* v. *Briggs*, 52 id. 553; *In re Com'rs, etc.*, 74 id. 95; *People* v. *O'Brien*, 38 id. 199; *People* v. *McCann*, 16 id. 58; *Williams* v. *People*, 24 id. 407; *Huber* v. *People*, 49 id. 134; *Watertown* v. *Fairbank*, 65 id. 583.) Notwithstanding the statute affects to make the tax-deed conclusive evidence, yet defects in the proceedings may be proved under the ordinary rules of evidence, and the alleged tax titles defeated. (*Stewart* v. *Crysler*, 22 Week. Dig. 441; Kent's Com. 408, 423; *Dash* v. *Van Kleek*, 7 Johns. 447; *Vance* v. *Vance*, 28 Alb. L. Jour. ·66; *Hickox* v. *Tallman*, 38 Barb. 612; 30 Hun, 121; *Jackson* v. *Morse*, 18 Johns. 441; *White* v. *Hart*, 13 Wall. 653; *Osborn* v. *Nicholson*, 13 id. 646; *Taylor* v. *Porter*, 4 Hill, ·140; *Wynehamer* v. *People*, 13 N. Y. 394; *Wilkinson* v. *Leland*, 2 Pet. 658; *Atkins* v. *Dunlap*, 50 Me. 111; *Coffin* v. *Rich*, 45 id. 507; *Read* v. *Frankfort*, 23 id. 318; *Proprietors Ken. Pur.* v. *Laboree*, 2 id. 275.)

*John G. Hall* and *D. H. Bolles* for respondents. It is to be presumed that the county treasurer published the notice of redemption as required by the statute. (*Colman* v. *Shattuck*, 62 N. Y. 348, 358.) The use in the certificate of the word " creditor " in place of the word " debtor " was a mere clerical error, which misled no one and does not indicate that the assessors adopted an unsound basis of assessment. (*McIntyre* v. *Sanford*, 9 Daly, 21.) The objection to the roll, based upon the fact that no denomination is given in the copy of

the assessment-roll produced, to the figures representing the valuation, and likewise to the figures representing the tax is unimportant. (*Am. T. Co.* v. *Smith*, 32 Hun, 121; 96 N. Y. 670; *Chamberlain* v. *Taylor*, 36 id. 24.) The statute did not require that the roll should specify the road district in which the labor had been assessed nor the number of days labor. (1 R. S., chap. 16, pt. 1, art. 3, tit. 1, §§ 47, 50, 51.) As to the time of preparation and delivery of the notice, the statute was merely directory. (*People* v. *Allen*, 6 Wend. 486; *Bradley* v. *Ward*, 58 N. Y. 401; *People* v. *Assessors of Wilson and Somerset*, 10 N. E. Rep. 871.) All the non-resident lands in a town are subject to highway labor. (Bacon's Ab. "Statute D;" *Harrington* v. *Trustees*, 10 Wend. 547; *Bowen* v. *Lease*, 5 Hill, 225.) The act of 1850, subjects to its course of procedure, all non-resident lands which had been theretofore regularly returned to the comptroller. (*Smith* v. *People*, 47 N. Y. 330.) The occasion that called for the passage of the law and the object sought by its enactment are properly to be considered in determining its construction. (*Sturgis* v. *Hall*, 48 Vt. 302: *People* v. *Sup'rs*, 70 N. Y. 228; *Smith* v. *Newell*, 32 Hun, 501; *Nash* v. *White's B'k*, 37 id. 57; *Hartung* v. *People*, 22 N. Y. 108; *Southwick* v. *Southwick*, 49 id. 517; *Denman* v. *McGuire*, 101 id. 161; *Capron* v. *Strout*, 11 Nev. 304; *Randolph* v. *Larned*, 27 N. J. Eq. 557; *State* v. *Vernon Co.*, 53 Mo. 128; *Grey* v. *Mobile Tr. Co.*, 55 Ala. 387.) When an act amending a former act re-enacts provisions of the former, the latter act will be taken as a mere continuation of those provisions of the former, and all proceedings had in pursuance of these provisions, while the former act was in force, remain valid and effectual. (*State* v. *Wish*, 15 Neb. 448; *Scheftels* v. *Tabert*, 46 Wis. 439; *State* v. *Baldwin*, 45 Conn. 134; *Dashill* v. *Mayor, etc.*, 45 Md. 615; *Ballin* v. *Ferst*, 55 Ga. 546; *Middleton* v. *N. J. R. R. Co.* 26 N. J. Eq. 269; *State* v. *Vernon Co.*, 53 Mo. 128; *Lande* v. *Chic. R. Co.*, 33 Wis. 640; *Belvidere* v. *Warren R. Co.*, 34 N. J. L. 193; *Pac. Tel. Co.* v. *Comm.*, 66 Penn. St. 70; *Pac. M. Co.* v. *Goliffe*, 2 Wall. 450; *Smith* v. *People*, 47 N. Y. 330.)

FINCH, J.   If the tax title of the defendants is good, any discussion of the plaintiffs' title and the alleged defect breaking its chain, will prove to be needless; and it is best, therefore, to inquire whether, conceding the sufficiency of the plaintiffs' title taken by itself, it has been destroyed and rendered unavailing by the paramount title of the defendants, derived through a sale of the land for taxes.   Two such sales occurred; one by the comptroller in 1843, and one by the treasurer of Cattaraugus county in 1852.   Various defects in the proceedings are disclosed, which the appellants claim invalidated the resulting conveyances and to the effect of which a large portion of the argument was directed.

So far as these defects were not jurisdictional and amounted only to irregularities, they were cured by the act of 1882 (Chap. 287), which provided that where fifteen years had elapsed after a conveyance by the comptroller or county treasurer of lands in Chautauqua or Cattaraugus county belonging to non-resident owners, and such owners had not entered into actual possession of the same and made permanent improvements thereon, the deed or conveyance should be " conclusive " evidence that " the sale and all proceedings prior thereto, from and including the assessment of the land and all notices heretofore or hereafter required by law to be given, previous to the expiration of the time allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of all laws requiring and directing the same or in any manner relating thereto."

Before considering the scope and range of this enactment, relatively to the defects in the tax sales, it is necessary to dispose of an attack upon the statute itself as being in conflict with the Constitution.   Its title is " An act to amend chapter 229 of the Laws of 1879, entitled ' An act in reference to the collection of taxes in the counties of Chautauqua and Cattaraugus and the acts amendatory thereof and supplementary thereto.' "   It amends section 32 of the act of 1879.   It makes the deeds of the comptroller and county judge and treasurer presumptive evidence of regularity in all cases, and

conclusive evidence of regularity in some. The criticism suggested is that more than one subject is embraced in the bill, and so it violates section 16 of article 3 of the Constitution. We are not of that opinion. The one subject of the bill is the collection of taxes in the two counties named. That fairly covers the entire system of collection. The sale of the lands enforces the collection; the deeds give effect and vitality to the sale, and their force as evidence and as muniments of title is a natural and essential element of the system. In *Supervisors* v. *Allen* (99 N. Y. 532, 538), a similar objection was considered. The title was in the form of that under discussion and it was claimed that provisions authorizing the supervisors to designate the banks in which the treasurers should deposit the state moneys and directing such banks to pay interest and give bonds, introduced a new subject and one not covered by the title. We held the contrary, deciding that the provisions were connected with the subject designated in the title. That adopted in the statute before us is not deceptive or misleading. The enactment contains nothing which one reading the title might not reasonably and naturally expect to find in the statute as within its scope. That title gave notice that an amendment of the laws in force in the two counties for the collection of taxes was proposed, and no reader of or listener to that title, could fairly complain of deception at whatever point of the general system or its details an amendment was introduced bearing upon the manner or efficacy of the system of tax collection. (*Matter of application of Paul*, 94 N. Y. 497, 505.) The act did not violate the fundamental law in the respect under consideration.

But it is further assailed as retrospective in its operation and in violation of section 6 of article 1 of the Constitution which provides that no person shall be deprived of life, liberty or property without due process of law. The counsel on both sides agree as to the legitimate range of a curative statute. They agree that a retrospective statute curing defects in a legal proceeding where they are in their nature irregularities only and do not extend to matters of jurisdiction, is

not void on constitutional grounds; that if the thing wanting or omitted, which constitutes the defect is something, the necessity for which the legislature might have dispensed with by prior statutes, or if something has been done or done in a particular way which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute. We see no reason to disagree with the counsel in this general statement of the law, at least for present purposes, though it may not be above criticism or beyond exception. The act of 1882 does not on its face purport to cure jurisdictional defects. It raises a conclusive presumption of regularity, but leaves the question of the assessors' jurisdiction and authority unaffected. Thus understood, it comes within the rule which counsel concede to be correct. It does not make the tax deed conclusive evidence of a complete title, but leaves open to the owner full right to assail the proceedings in any jurisdictional respect.

We should, therefore, disregard such defects in the proceedings as are not jurisdictional, but founded upon acts or omissions wholly within the power of the legislature to have dispensed with or treated as immaterial, and in so doing it will be found, I think, that only the two defects pointed out and relied upon by the senior counsel of the appellants are open to discussion. Confining our attention to the tax title of 1852 we are required to consider the following alleged defects. That sale was made for the county and highway tax of 1849 and it is objected that the amount of the tax is not expressed in dollars and cents. This objection is founded upon the absence of the dollar mark. In *American Tool Company* v. *Smith* (14 Abb. [N. C.] 378), the same difficulty appeared on the face of the assessment-roll and was held not to invalidate the assessment. That case was affirmed in this court. (96 N. Y. 670.)

The second objection made is, that the assessors did not sign the roll. The statute required that the assessors should sign the assessment-roll and attach a specified certificate which should also be signed by them. (1 R. S., part 1, chap. 13, title 2, art. 2, § 26.) In the present case the certificate was

signed but the roll not. That certificate referred to and identified the roll to which it was attached. It spoke of it as the "above assessment-roll," and as having been the work of the assessors. Passing by all consideration of what might have been the consequence of this omission if no healing act had been passed, it is quite evident that the legislature might have dispensed with the signatures of the assessors to the roll as such and been content with their signature to the certificate appended as a sufficient identification of the official act. In the present case the certificate was written upon the roll itself and not merely annexed to it, and it would have been entirely within the legislative power to have made the one signature to the certificate alone necessary. The defect, therefore, was not so jurisdictional as to be beyond the reach of the act of 1882.

We take the same view of the third defect enumerated. The form of the certificate is prescribed and in that part of it which relates to the mode of valuation the words "solvent creditor" appear instead of "solvent debtor." The question is not as to the effect of this error upon the tax while *standing* unexcused, but of the power of the legislature by a subsequent and healing statute to make it immaterial and leave it harmless. The provision is important and useful, but the legislature might have dispensed with it entirely without affecting the validity of the tax, or required it to follow the very phraseology here adopted.

The same answer awaits the fourth objection, which is founded upon the date of the assessors' certificate indicating that it was made August 4, 1849. We are not quite sure that we understand correctly the appellants' brief upon this point. They seem to concede that, as the law then stood, though it is different now, the roll could legally have been verified as early as the first day of August, and should have been verified "forthwith." That assumes that the verification was too late. But they also cite authority to show that it was too soon. This defect, if it was one, was also in the nature of an irregularity which we need not consider further.

The fifth objection is, that the highway assessment was void because no number of road district, or date of commissioners' warrant was given. We are referred to no provision of the law which requires these details to appear on the assessment-roll, and we have discovered none.

The sixth objection is, that the treasurer's notice of the tax sale was required by the act of 1850, which was then in force, to be delivered to the printer for publication on or before the 1st day of September, 1852, whereas it is dated September 15, 1852, and presumably was not delivered to the printer until at least that date. The day of sale was the first Tuesday in December; the notice of sale was published once in each week for the prescribed ten weeks, as the affidavits of the printers show, and the defect relied on is simply that the notice was not delivered for publication as early as it should have been. The respondents cite authority for the doctrine that the provision for delivery on the first of September is directory only; but whether that be so or not it is certain that the defect was not beyond the remedy of the act of 1882.

The defects thus far considered leave only two remaining which are alleged against the validity of the tax sale of 1852, but these are jurisdictional and go so directly to the authority of the assessors to levy the tax at all that they must be considered on their merits and without aid from the statute of 1882.

A portion of the tax on which the sale of 1852 was made appears to have been a highway tax assessed in 1849, and the appellant claims that at that date there was no law which authorized an assessment for highway purposes upon non-resident lands not occupied or improved. The contention is that section 1 of the act of 1835 which provides that "the real property of non-resident owners improved or occupied by a servant or agent, shall be subject to an assessment of highway labor and at the same rate as the real property of resident owners" should be read as if it contained the words "and those only," and thus, exempting all other non-resident lands from a highway tax, repealed by implication, section 19 of title 1, chapter 16, part 1 and article 2 of the Revised Statutes,

which made all non-resident lands assessable for highway labor where pierced or adjacent to a road. But later sections of the act of 1835 are inconsistent with this idea and become repugnant and incomprehensible upon any such construction. Its second section amends section 22 of the chapter of the Revised Statutes referred to, and requires the commissioners of highways to make out a list of *all* lots, pieces and parcels of land *owned* by non-residents. What possible need was there of this if only a class of occupied and improved lands of non-residents were to be taxed? Section 3 of the act of 1835, again amends section 24 of the Revised Statutes and provides for assessing every male inhabitant at least one day, and then adds that the residue shall be apportioned upon the estate of every inhabitant of the town *and* upon "each tract or parcel of land of which the owners are non-residents *contained in the list made as aforesaid.* The statute adds that if there still be a deficiency of the labor it shall be assessed upon the estates of the inhabitants and upon each tract or parcel of land of which the owners are non-residents. Surely these contradictions should scarcely be charged upon even a very careless legislature. The consequences of such a construction also challenge our attention. Not only are all unoccupied or unimproved lands of non-residents relieved of the highway burden but even those occupied and improved by persons other than the owners "servants or agents." A tenant is in no just sense either a servant or agent of the landlord. Paying his rent, he is in of an estate of his own, and a non-resident owner might lease his lands to a tenant for years and the property have the benefit of the highways and bear none of the burdens. The only escape would be to treat the tenant as owner and the lands as no longer non-resident. And that suggests the true meaning of section 1. The provisions of the Revised Statutes left open a troublesome question likely to create doubt and disagreement among highway officers. Section 19 commanded that every *person* owning or *occupying* land in the town in which he or she resides, and the lands of non-residents should be assessed for highway labor. If, now, land owned by a non-

resident should be occupied by a resident agent or servant, in which form should it be taxed? If treated as non-resident land it would be exempt if no road pierced it or adjoined it, and, if assessed, it could only be at the rate of a quarter day's labor for every $100 of valuation; but if treated as the land of a resident occupant, neither the exemption nor the limitation would apply. This difficulty the legislature solved by the act of 1835. That provided that lands of a non-resident occupied or improved by such owner or his agent or servant should be assessed in the same manner and at the same rate as resident lands. The purpose thus disclosed was obvious. It was to treat lands thus occupied as if belonging to a resident and take them out of the category of non-resident lands. The amendment of 1835 dropped the word "owner" and somewhat changed the phraseology of section 1, but did not alter its purpose or effect; so that the result of the change was to make lands occupied or improved by the non-resident owner's agent or servant assessable against the occupant as resident lands and at the same rate and leave non-resident lands not so occupied or improved to the assessment provided by the statute. This view of the law seems to us reasonable and sensible. It does away with the contradictions to which we have referred, avoids an exemption of non-residents by inference which the legislature would have distinctly directed if that had been the intent, and enables the two statutes to stand together without a repeal by implication. It is said that section 1 of the act of 1835 covers the whole subject and furnishes the entire rule and system, and, therefore, section 19 of the Revised Statutes must be deemed repealed. That assumes the exact point in controversy. We think the section referred to does not cover the whole subject; indeed, but a very small part of it; and deals only with a specified class of non-resident lands. For these reasons we hold that the assessors had jurisdiction and authority to assess the land for highway purposes, unless the final objection taken to that jurisdiction shall prove to be valid.

The sale of 1852 was made when the act of 1850 (chap. 298) was in force. That act expressly repealed articles 2 and

3 of title 3, chapter 13, part 1 of the Revised Statutes, but with a proviso that such repeal should not affect "any tax levied or assessed *prior* to the year 1849, nor any *proceeding* for the collection thereof by a sale of the lands taxed or otherwise." Such assessments and the proceedings for their enforcement, prior to 1849, were thus left to the operation of the then existing law and not subjected to the new process. The act of 1850 was passed on the tenth day of April in that year. Before its passage, and on or before the first day of that month, the lands here in question had been returned to the comptroller as non-resident lands upon which the taxes remained uncollected. This return had been made by the treasurer in accordance with the then existing law, which in that respect was identical with the provisions of the act of 1850. The claim is now advanced that the latter act was wholly prospective, and that as to non-resident taxes of 1849 no law existed for their collection, the old law having been repealed and the new law being strictly prospective. This reasoning involves a conclusion that the legislature deliberately intended not to collect the non-resident taxes of 1849. Why that should have been so it is impossible to conceive. Such a result produces injustice to the state and violence to that equality of taxation which the law deems both just and essential. Nothing in the terms of the act of 1850 makes the return to the comptroller invalid or ineffectual, and no such purpose is anywhere disclosed. On the contrary, the object of the act was evidently to change proceedings for the collection of non-resident taxes in a single essential particular, which was to place the sale of such lands in the authority of the county treasurer and take it away from the action of the comptroller. The legislature evidently believed that the new provisions, as well as the repealing clause, would affect taxes of previous years, for the act guards against both as it respects the years "prior to" 1849; and its assertion that the repeal of the old law should not affect taxes assessed previous to 1849, or proceedings in progress for their collection, quite plainly implies that the new act was intended to affect the taxes of

1849 and the proceedings taken thereunder by changing the future and prospective course of such proceedings. The second title of the act relates to sales for unpaid taxes, and provides that "whenever any tax on lands returned to the comptroller" shall remain unpaid, proceedings for a sale shall be initiated. There is no hint in the language used that a return before April 10, 1850, of lands assessed in 1849 is to be excluded, or that the return referred to means only one made under the act of 1850, but the words are general and cover every lawful·return to which the new process can by any possibility apply. The trouble with this question has mainly originated in an expression of this court confining the operation of the act of 1850 to cases arising after its enactment. (*Whitney* v. *Thomas*, 23 N. Y. 581.) There is no doubt of the correctness of that decision upon the question then at bar, but the effect of the act of .1850 upon taxes assessed in 1849 upon non-resident lands and a return to the comptroller, anté-dating that act, was not before the court or at all considered. The trouble there was that lands of a non-resident had been assessed as resident and returned to the· comptroller as in arrears. This court correctly held that under the law prior to 1850 there was no authority for a sale by the comptroller of lands assessed to an inhabitant, and the terms of the new law provided a process special and peculiar which had not at all been followed and was pronounced wholly prospective. In that case the old proceedings had been followed, though without authority, and the new proceedings had not been and could not have been pursued. Here the change came at a possible point to be effective. The assessment of 1849 was valid, and the return to the comptroller lawful and regular under either statute, for so far they did not differ. The future proceedings could not go on under the repealed law but could and were intended to be conducted under the new and substituted system. This view of the statutes is natural and reasonable and avoids a public mischief and consequences assuredly not within the contemplation of the legislature.

The defendants, therefore, established their title, and the decision of the courts below was correct.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.

Upon a subsequent motion for reargument the following opinion was handed down.

FINCH, J.   A motion is made in this case, after the filing of the remittitur in the court below and the entry of judgment thereon, that we address a request to such court to vacate the judgment and return the remittitur with a view to a reargument of the appeal.

I have examined the criticisms upon the opinion delivered with all the care which the importance of the case demands, and with a desire to correct any error which may have been committed, but ending in a conviction that no ground for ordering a reargument exists:

1. It is said that the opinion in reciting the statute of 1882, omitted the word " valuable " as qualifying the word " improvements." As there was no pretense in the case that any improvements, valuable or not, had been made upon the premises before that act, such literal repetition of the language was totally immaterial to the point in dispute, and only the material purport of the statute was intended to be stated.

2. That no specific reference to the Federal Constitution was made is true, but the provisions of the State Constitution are equally broad upon the question argued, and similar considerations apply to each.

3. This court did not hold in *Howard* v. *Moot* (64 N. Y. 262 268) that such an act as that of 1882, making evidence conclusive of regularity, is unconstitutional. The court only said, in substance, that even if that were so it would not affect the case then under consideration.

4. It is intimated that we were mistaken in saying that the assessor's certificate was written on the assessment-roll. It so

appears in the copy of assessment-roll used as an exhibit, and there is no suggestion in the case to the contrary. If the fact were not so, and the certificate was attached to the roll, the argument and the conclusion would remain the same.

5. Finally, passing over one or two suggestions that require no answer, our attention is called to the case of *Shattuck* v. *Bascom* (105 N. Y. 39). We there held a defect in the assessor's affidavit fatal to the assessment. We did not speak of the defect as jurisdictional, though if we had, no collision of authorities would have resulted. The opinion in the present case is careful not to deny a possible fatal result of the defect, although it is rather formal than substantial, but for the curative effect of the statute of 1882, which had no parallel in any form in the facts of the cited case. In the opinion then delivered the defect was not deemed jurisdictional in any other sense than the modified one of an essential condition under the law *as it stood*. Whether it was *so* jurisdictional as that the legislature could not have dispensed with it, and, therefore, could not cure its omission is a very different inquiry. A defect may be in one sense jurisdictional relatively to the authority of the assessors acting under an existing law, and yet not so as it respects the power of the legislature to pass a statute curing the defect; and it is only by confusing these two things, which the opinion separated, that a seeming contradiction can be reached.

The motion, therefore, should be denied, with $10 costs.

All concur.

Motion denied.