(10 App. Div. 581.)

### HAGNER v. HALL et al.

(Supreme Court, Appellate Division, Second Department. December 8, 1896.)

1. TAXATION—VACANT LAND—NONRESIDENT OWNER.

In the city of Brooklyn, where a vacant tract owned by a nonresident was assessed as resident land to a fictitious person, and taxed as such, the defect was jurisdictional, and a retroactive statute could not validate the tax without a reassessment.

2. SAME—RETROACTIVE STATUTE—CONSTITUTIONALITY.

Laws 1885, c. 411, § 1, purporting to validate all taxes assessed on lands of nonresidents, is unconstitutional in so far as, without a reassessment and notice to the taxpayer, it undertakes to validate a tax void for a defect which goes directly to the authority of the assessors to levy the tax at all.

3. SAME—JURISDICTIONAL DEFECT—LIMITATIONS.

Where a defect in the original imposition of a tax is jurisdictional, and therefore irremediable by subsequent legislation, the statutory provisions which make the deeds of a comptroller on tax sales, after a certain lapse of time, conclusive evidence that the sales and all proceedings prior thereto were regular (Laws 1885, c. 448; Laws 1891, c. 217; Laws 1893, c. 711), do not apply.

Appeal from special term, Kings county.

Action by Mary Jane Hagner against Amos C. Hall and Frederick N. Smith to have certain deeds adjudged void, as a cloud on plaintiff's title. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

F. R. Gilbert, for appellants.
William J. Griffin, for respondent.

CULLEN, J. This is an action to have two deeds, executed on two tax sales of a lot of land in the Twenty-Sixth ward of the city of Brooklyn, and subsequent deeds by which the title of the tax purchasers became vested in the defendants, adjudged void, as a cloud upon the plaintiff's title. The sales were made for unpaid taxes for the years 1872 to 1883, inclusive. During this period the Twenty-Sixth ward in the city of Brooklyn was the town of New Lots, in the county of Kings. The title of the plaintiff, except as affected by the tax sales, is conceded. During the same period the lot was wholly unoccupied, and the plaintiff and her predecessors in title were nonresidents of the town. During these years the property was assessed as resident land to one Theodore W. Burthbridge, or Burbridge. It is admitted that Burbridge was never the owner or occupant of the premises sold, and, in fact, that such a person did not exist. The lot was returned to the comptroller of the state, on account of the unpaid taxes, and subsequently sold

by that officer; the state becoming the purchaser on the first sale, the defendant Hall on the second sale. The title of the state was subsequently acquired by Hall, who conveyed to the defendant Smith. The special term held the tax sales and deeds made thereunder void, and rendered judgment in favor of the plaintiff. From that judgment this appeal is taken.

That the original levy of these taxes was void is not disputed by the appellants, but it is contended that they were validated and rendered effective by a subsequent act of the legislature, known as chapter 411, Laws 1885. The first section of that act is as follows:

"All taxes heretofore admitted by the comptroller, and which have not been paid or cancelled on lands of non-residents in towns within counties containing upwards of 300,000 inhabitants, and all unpaid general and school taxes heretofore assessed on lands of non-residents in said towns, which shall hereafter be returned to and admitted by the comptroller, whether said lands were entered in the several assessment rolls separately as the lands of non-residents or otherwise, shall be, and the same are in all respects hereby legalized and confirmed."

The unpaid taxes on plaintiff's lot fall within the provisions of this section. If the statute is constitutional and operative, then the plaintiff's land was properly sold. The first question before us is the constitutionality of the statute. The act went into effect on June 8, 1885. The first sale made by the comptroller was in December, 1885. Therefore, there is no question here of the ratification or legalizing of a void tax sale, and the case does not fall within the condemnation of the decision in Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932. The question is simply the narrow one of the power of the legislature by this statute to legalize the tax. The power of the legislature to pass retrospective statutes, curing defects in the levy of taxes in certain classes of cases, is unquestioned.

As said by Judge Finch, in Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, and 15 N. E. 401:

"Where they are in their nature irregularities only, and do not extend to matters of jurisdiction, [the statute] is not void on constitutional grounds. If the thing wanting or omitted which constitutes the defect is something the necessity for which the legislature might have dispensed with by prior statutes, or if something has been done, or done in a particular way, which the legislature might have made immaterial, the omission or irregular act may be cured by subsequent statute."

The same principle was recognized in Cromwell v. MacLean, supra, where Judge Peckham said:

"The legislature, undoubtedly, has large powers in the way of curing certain defects in proceedings to tax the citizen. In cases where the proceedings have been such that the citizen has had his chance to be heard before the tax was finally imposed, but, nevertheless, defects have been discovered in such proceedings, if the thing omitted, and which constitutes the defect, be of such a nature that the legislature might, by prior statute, have dispensed with, or if something has been done, or done in a particular way, which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute. This was so stated, and in substantially identical language, in Ensign v. Barse."

Other cases are to the same effect. See Tifft v. City of Buffalo, 82 N. Y. 204; Terrel v. Wheeler, 123 N. Y. 76, 25 N. E. 329.

But it does not follow that all defects, of every character, in levying a tax, may be cured by subsequent legislation.

In Re Lamb, 51 Hun, 633, 4 N. Y. Supp. 858 (affirmed, without opinion, 121 N. Y. 703, 24 N. E. 1100), we said:

"The respondent contends that it [the statute] is unconstitutional, and that the legislature cannot relevy or validate a tax without providing for notice to the taxpayer, and for a hearing. We are of opinion that this contention is not universally true, and that its soundness or unsoundness depends on the character of the defect for which the original tax was invalid. If there was no statute authorizing the imposition of the tax in the first instance, or if the statute purporting to confer authority was void for lack of provision for notice and hearing, or any other reason, the doctrine contended for would apply."

When, in Ensign v. Barse, supra, the opinion reached the discussion of two defects urged against the validity of the tax,—the first, that no law authorized the imposition of a highway tax on nonresident lands in the year 1849; and the second that no law authorized a sale for such a tax, assuming that there was law for the tax itself,—Judge Finch said of such defects:

"These are jurisdictional, and go so directly to the authority of the assessors to levy the tax at all that they must be considered on their merits, without aid from the statute of 1882."

In Re Trustees of Union College, 129 N. Y. 308, 29 N. E. 460, the charter of Long Island City authorized the imposition of water rates, which were made liens on the premises. The charter gave no hearing to the taxpayers as to the amount or apportionment of such rates. The court held, in accordance with its previous decision in Remsen v. Wheeler, 105 N. Y. 573, 12 N. E. 564, that the rates were void for the violation of the constitutional right of the rate payers to a notice and hearing. By subsequent statutes, it was enacted that those water taxes previously imposed should be charged and assessed as originally made, and that the same should in all respects be confirmed and levied. It was held, reversing the decision of the general term, that these statutes were void. Judge Finch there wrote:

"The act of 1886 again attempts to ratify and confirm the unconstitutional assessments, without curing their inherent defect, and both acts are now sought to be sustained upon the doctrine of Spencer v. Merchant (N. Y. App.) 3 N. E. 682, and 8 Sup. Ct. 921, as a direct assessment by the legislative authority. * * * But when the public questions are settled, and the tax comes to be apportioned, a personal liability of the individual and a lien upon his property are initiated; and he has a right then to be heard upon all the questions which determine and affect that liability. His right is to pay no more than his just proportion, and the legislature cannot arbitrarily determine the amount, refusing to the person assessed a respectable opportunity to be heard."

In the light of this decision, I do not see that it is possible to successfully maintain the proposition that the legislature might have levied the taxes here in dispute directly itself. If it could levy these taxes directly, it is difficult to see why it could not have directly levied the water rates in the Union College Case; and it cannot be claimed that the amount of the tax and the property taxed are more distinctly or directly specified in this case than in the one cited. The

validity of the act of .1885 must therefore depend on the character of the defects sought to be cured by it.

In Re Lamb, supra, the irregularity was the failure of the assessors to make or attach to the rolls the affidavit required by law. It was held that this defect could be cured, and the tax validated by subsequent legislation. In Clementi v. Jackson, 92 N. Y. 591, the tax was void for lack of an affidavit, sworn to by two of the assessors, that they had personally examined, within one year past, every lot of land within the ward; yet the curative act was upheld. In Ensign v. Barse, supra, the assessors failed to sign the roll. It was held that this defect was not so jurisdictional as to be beyond the reach of validating legislation.

In the case before us the owners had ample opportunity for hearing before the board of assessors. If, therefore, the defect in this case was only an irregularity, the statute of 1885 was constitutional, and has rendered the taxes valid. I am not inclined to enter into subtle discussion or nice distinction between defects that are irregularities and those that are jurisdictional. In the decided cases are to be found expressions condemning defects in the levying of taxes as jurisdictional, which, undoubtedly, the legislature could cure by subsequent laws. As pointed out by Judge Finch in Ensign v. Barse, there are defects which may be deemed jurisdictional under the law as it stands, yet not so jurisdictional that the legislature may not subsequently cure them. It becomes necessary, therefore, to examine the character and effect of proceedings for the taxation of lands of resident owners under the general system of the state. If they are proceedings to tax the land itself, I should be inclined to admit that the error in the imposition of the taxes laid on the plaintiff's land was an irregularity only, or, at least, not so jurisdictional as to be beyond the reach of subsequent legislation. But, in my view, the proceeding is not one essentially or primarily to create a tax lien on the land, but to affix liability on the owner. Until the year 1850, the tax in the case of the lands of residents could never become a lien on the land. The sole method of enforcing it was from the personal property of the owner. If the tax of one year was unpaid, it was added to the tax of the next year, and attempted to be collected with it out of personal property. Thus, taxes in default became cumulative, but not charged on the land. Taxes in the case of lands of nonresident owners were charges on the land, and created no personal liability against the owner. In 1850, and afterwards in 1855, the system as to unpaid taxes of residents was changed. When the tax was in default, the next year it was to be levied and returned in the same manner as is the case with lands of nonresident owners. Still, in my opinion, this has not changed the effect of the proceeding. It is essentially a proceeding to create a debt against an individual. The individual is the primary debtor, and the land is only in the nature of surety, liable for his default. So, it has been repeatedly held in this state that, unless resident lands are assessed to the true owner or to the occupant, the tax is void. Hilton v. Fonda, 86 N. Y. 339; Stewart v. Crysler, 100 N. Y. 378, 3 N. E. 471; Whitney v. Thomas, 23 N. Y. 281.

In Haight v. Mayor, etc., 99 N. Y. 280, 1 N. E. 883, the question was whether the insertion in the tax roll of the "Est. of B. K. Haight" as owner rendered the tax void. It was held that in the city of New York it did not, the only effect of omitting to insert the name of the owner being to deprive the city of the right to collect the tax from the owner personally by distress of goods, and confine its remedy to its lien on the land. Judge Rapallo wrote:

"In this respect the system of taxation upon land in the city of New York differs from that provided in the Revised Statutes for other parts of the state, * * * where the inhabitant so taxed is personally liable, not only for the taxes imposed upon his personal estate, but also for those upon his real estate. Taxes on real estate thus imposed, besides being collectible out of the personal property of the inhabitant taxed, constitute a lien upon the land for which he has been taxed. Under this system, it has been repeatedly held that, unless land is assessed to the real owner or occupant by his name, the tax is void."

In Rundell v. Lakey, 40 N. Y. 513, the question was as to the liability between grantor and grantee of a person who was the owner of the lands at the time of making up the assessment rolls, but conveyed prior to the levy of the tax. The grantor was held liable. A majority of the court did not agree upon any specific ground. Judge Grover wrote for affirmance, on the ground that the tax was a personal liability of the owner.

In Barlow v. Bank, 63 N. Y. 399, the plaintiff sued the defendant for the amount of a tax confirmed by the board of supervisors after a conveyance from the latter to the former. It was held that there was no lien on the land until the levy of the tax by the supervisors, and there was no breach in the defendant's covenants. In that case, however, there was no personal assessment against the defendant, but the land was assessed against an occupant.

If it be the true theory of taxation in the case of residents that the proceeding is against the person, and only collaterally against the land, I think it is clear that the so-called "defect" in this case could not be cured, so as to make a valid lien upon the lands of the plaintiff, save by proceedings for reassessment, requiring a hearing and notice. For the levy of a tax originally illegal to be capable of being validated so as to be enforced, it must, at least, have the semblance and form of a tax against the particular person or thing against which it is to be enforced. In this case there was no personal tax against the owner, nor was there any express charge against the land; there was, or purported to be, a tax against "Burbridge," and for whose default, had he been the owner or occupant, the land would have become liable. As he was neither, the land was not subject to any lien. Further, there was no "Burbridge," and, as there was no debtor, there could be no debt. Therefore, the effect of the act of 1885, if constitutional, was not to validate an irregular or even void tax, but to create a tax which, in law, had never been imposed, or attempted to be imposed. The case in this respect seems to fall within the principle of People v. Wemple, 117 N. Y. 77, 22 N. E. 761. There the relator was a nonresident owner, but his land was occupied by tenants, residents of the town. The lands were assessed to the non-

resident owner, and therefore the tax was illegal. The comptroller vacated a tax sale for this illegality. But acting under a statute (chapter 453, Laws 1885) providing that "whenever any unpaid tax levied upon an assessment of land by a town or ward having a legal right to assess the same, which may be returned to and admitted by the comptroller, shall be ascertained, either before or after the sale thereof, to be illegal or void, by reason of any irregularity or defect," the comptroller should be empowered to relevy the correct amount of such tax, that officer relevied the tax. It was held that such action was unauthorized; that the relevy of the tax by the comptroller necessarily involved a new assessment against the occupants; that such could not be made without provision for notice and hearing; and that, if the statute were to be construed as authorizing the comptroller so to act, it would be void for want of such provision. I think that this decision necessarily proceeds on the theory already asserted, that the taxation of resident lands is a proceeding essentially and primarily against persons, and not against the land. If it is to be regarded as a proceeding against the land, it is difficult to see why there should be any constitutional necessity for notice and a hearing other than that originally given, or why the tax could not have been upheld as against the lands without any personal imposition of it upon the occupants.

The appellants' counsel urges upon us the authority of Witherspoon v. Duncan, 4 Wall. 210, where the supreme court of the United States said:

"Arkansas has the right to determine the manner of levying and collecting taxes, and can declare that the particular tract of land shall be chargeable with the taxes, no matter who is the owner, or in whose name it is assessed and advertised, and that an erroneous assessment does not vitiate a sale for taxes."

I do not gainsay this doctrine. There the tax was one levied on the land. Nor is there any doubt that the legislature might provide that taxes for resident lands should be levied on the lands, as is the case in New York, in Brooklyn, and with respect to nonresident lands throughout the whole state. The question is not what proceeding the legislature might have directed or authorized, but what it did direct and authorize. If, by error, a tax was levied upon A., when it should have been imposed on B., the legislature might provide for a correction of the error by a reassessment of the tax upon B., giving him notice and a hearing. But it cannot, by mere legislative fiat, direct that the tax imposed on A. should be levied upon and collected from B., or from the property of B. We are therefore of the opinion that there was no tax on the land of the plaintiff which could be rendered legal or effective.

The next claim of the appellants is that the plaintiff is barred from maintaining this action by the provisions of various statutes which make the deeds of a comptroller on tax sales, after a certain lapse of time, conclusive evidence that the sales and all proceedings prior thereto, including the assessment of the land, were regular. Laws 1885, c. 448; Laws 1891, c. 217; Laws 1893,

c. 711. This claim must stand or fall with the main contention of the appellants. If the defect in the original imposition of the tax was of so jurisdictional a character as to be beyond the reach of a curative act, then the statutes do not preclude the plaintiff from asserting such defects. Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604; People v. Turner, 145 N. Y. 451, 40 N. E. 400. In the latter case, Judge Gray takes care to thus limit some expressions found in the opinion of Ruger, C. J., delivered in a previous case between the same parties (117 N. Y. 227, 22 N. E. 1022).

The judgment appealed from should be affirmed, with costs. All concur.