WILLIAM N. LANDON, Respondent, *v.* THE CITY OF SYRACUSE and ELBERT F. ALLEN, as City Treasurer of the City of Syracuse, Appellants.

*" Street connections" between water mains and lots in Syracuse — the city must make them, but cannot assess therefor — action to vacate an assessment where the statute creates a presumption of regularity.*

Although the city of Syracuse is compelled, by section 165 of its charter (Chap. 26, Laws of 1885, as amended by chap. 950 of the Laws of 1895), to make water connections between water mains and lots abutting on a street, before laying an asphalt pavement in the street, the charter gives it no power, of its own motion, and without any application upon the part of the property owners in the matter, and upon their failure to do so when notified, to make such connections itself, and to assess the expense of so doing upon the property benefited thereby.

In view of the provisions of sections 125 and 123 of the city charter, that the warrant to be delivered to the treasurer, in the case of an unpaid assessment of this character, shall be presumptive evidence that all the previous proceedings were regular, and also that every conveyance made by the treasurer, in pursuance and enforcement of such an unpaid assessment, shall be conclusive evidence that the sale was regular and also presumptive evidence that all the previous proceedings were regular, a person, whose property is threatened to be sold by the city treasurer for the non-payment of such an assessment, may maintain an action against the city and its treasurer to vacate the assessment, inasmuch as by its levy there will be imposed upon the property owner the burden of showing affirmatively its invalidity.

APPEAL by the defendants, The City of Syracuse and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 2d day of June, 1896, upon the decision of the court rendered after a trial at the Onondaga Special Term.

*Charles E. Ide*, for the appellants.

*Woods & Smith*, for the respondent.

Judgment affirmed, with costs, on the opinion of HISCOCK, J., delivered at Special Term.

All concurred.

The following is the opinion of HISCOCK, J., in the above-entitled action and two others, involving the same questions:

HISCOCK, J.:

Each of these actions was brought to have vacated and annulled as void and without jurisdiction a purported local assessment for the purpose of defraying the expense of laying a connection between the main water pipe in Salina street and the curb of plaintiff's property, and to have restrained and enjoined all proceedings instituted or threatened for the purpose of enforcing such assessment.

A two-fold defense is urged, *first*, that such assessment is valid, and, *second*, that, even if it is invalid, there is no occasion for this resort to a court of equity.

There was substantially no dispute upon the trial of these actions about the facts, and in each thereof the following, amongst other facts, were either undisputed upon the pleadings or conceded upon the trial:

Some time on or about October 24, 1892, the common council of the city of Syracuse entered into a contract for the paving of South Salina street in front of the premises of each of the above-named plaintiffs. Prior to the paving of said street, and on or about October 24, 1892, a resolution was adopted by the common council requesting the water commissioners to put the necessary water mains in said street where such pavement was to be laid; and thereafter, and prior to June 5, 1893, the property owners at the location involved were notified by the commissioner of public works to make necessary water connections with said water mains, and that, in case of their failure so to do, the same would be made by the city at their expense. Thereafter, and on or about June 15, 1893, by the common council of said city, the clerk was directed to advertise for making such of said connections with the water main as had not

been made by the property owners, and some time subsequent thereto the common council, by resolution, authorized and directed a contract to be made by the mayor and clerk for making said water connections. Thereafter the assessors, by said common council, were directed to assess the cost of making such connections upon the property owners involved, including plaintiffs, which they thereafter did, resulting in the assessment complained of; and thereafter proceedings were instituted to collect such assessments pursuant to the provisions of the charter, giving rise to the proceedings set forth and complained of in these actions, namely, the delivery of a warrant for the collection of said assessments to the city treasurer; the filing of the tax roll of uncollected taxes (including those in question) for the year 1893; and the advertisement for sale of the property of the plaintiffs, respectively, by said treasurer, for the non-payment of said assessment.

It was further admitted that said treasurer threatened and intended to sell the property of plaintiffs, as stated in said advertisement; that said sale, at the time of the commencement of these actions, had been and then stood adjourned, and that said assessments stood upon the records in the office of the treasurer of the city of Syracuse and of the clerk of the county of Onondaga as unpaid.

There was no claim that any action was taken by, or in behalf of, the property owners in question asking for or authorizing the laying of these water connections.

It seems quite clear upon all of the facts, there being no petition or application by plaintiffs therefor, that the city did not have authority, under any provisions of the charter, to so lay these water connections and then assess the expense of so doing upon the respective properties of plaintiffs, and that the assessments complained of were and are without jurisdiction and invalid.

There can be no question but that good management required the common council to put in the water connections just as it did before the laying of an expensive asphalt pavement through Salina street. This is so patent that the charter absolutely required it to do it (§ 165, as amended by chap. 950 of the Laws of 1895), and I appreciate the pertinency of the suggestion made by defendant's counsel, that it was rather embarrassing to have the charter compel the city to do this work and the law then restrain it from collecting

the expense thereof from the property which alone could properly be made chargeable therewith.

This, however, was only a temporary embarrassment incidental to the change in system of our water supply. Formerly these expenses were chargeable to the water company, and now that that source of repayment to the city has passed out of existence (but since the work in question here), additional legislation has been passed, as I understand it, providing for reimbursement by local assessments.

The question giving rise to the main contention upon the trial was whether, assuming these assessments to be void, the facts warranted plaintiffs in bringing, respectively, these actions to vacate said assessments and enjoin defendants from any attempt to enforce them. And this question in turn was made dependent upon the other one, whether a person seeking to enforce rights under one of these assessments against the property purporting to be affected thereby would be compelled to disclose the invalidity of the assessments so as to defeat this purpose, or whether without so doing he would be able to present a *prima facie* case of right which would cast upon the property owner the burden of establishing the invalidity of the assessment. There is, as I understand it, substantially no difference of opinion between the counsel for the respective parties that, if the first alternative should prevail, the plaintiffs would not be entitled to bring these actions; that if the second one is the case here presented they are entitled to so bring them.

I think that the latter proposition is the correct one; that the plaintiffs would be compelled to show the invalidity of the assessment, and that, therefore, they are entitled to maintain these actions.

No serious contention seems to be made in behalf of the defendants that they have not done, and threatened to do, enough in the way of making, placing upon record and enforcing these assessments to furnish the basis for an action in that respect, and for apprehending that in due time deeds of the plaintiffs' property will be given under these assessments. The plaintiffs then point to these provisions of the charter of the city of Syracuse (Chap. 26 of 1885) which provide, the one (§ 125) that the warrant to be delivered to the treasurer (in case of unpaid assessments like this) shall be presumptive evidence that all the previous proceedings, including the assessing and levying

of the tax, were regular and according to law, and the other (§ 123) that "every such conveyance (in pursuance and enforcement of unpaid assessments) shall be executed by said treasurer under his hand and seal of said city, * * * and such conveyance shall be conclusive evidence that the sale was regular, and also presumptive evidence that all the previous proceedings were regular according to law and the provisions of this act." And from these provisions they claim that, unless restrained, the deed to be given, based upon these assessments, will be regular upon its face, and not only will not show the lack of jurisdiction and the invalidity of these assessments, but under the statute will carry an express presumption of regularity and validity. As above stated, I think this will be the effect of the deed directed to be given in proceedings for the enforcement of unpaid assessments like this. (See *Sixth Ave. Railroad Co.* v. *Mayor, etc., of New York*, 63 Hun, 271; *Allen* v. *City of Buffalo*, 39 N. Y. 386.)

The cases of *Ensign et al.* v. *Barse et al.* (107 N. Y. 329) and *Joslyn* v. *Rockwell* (128 id. 334), cited in behalf of the defendants and wherein the effect of language analagous to that used by the provisions of the charter in reference to the deeds in question is considered, are not, in my judgment, decisive in this case against the plaintiffs' contentions.

In those cases and in the one of *People* v. *Turner* (117 N. Y. 227), cited therein, the court had under consideration the question whether a statute clothing certain conveyances with the presumption of regularity and validity in certain respects prevented a party from overturning such conveyances by showing that the proceedings upon which they were based were without jurisdiction. They did not decide that the conveyances referred to in these statutes, when produced, did not carry with them a presumption of validity and create a *prima facie* title subject only to being overturned by affirmative evidence. In fact, an examination of the record on the trial of some at least of those cases discloses that it was held that the conveyances, under the provisions of the statute, being produced did create a *prima facie* title and impose the burden of attack upon the other party. Those cases, involving the consideration of language quite analogous to that under consideration here, are, therefore, authorities for the plaintiffs' contention that the provisions of the

charter would give the deed to be executed upon these assessments a presumption of validity and regularity requiring them by affirmative evidence to show lack of jurisdiction, invalidity, etc.

It is well settled that, this being the case, the plaintiffs are entitled to bring these actions to have the assessments complained of vacated and all proceedings thereunder enjoined. (*Scott v. Onderdonk*, 14 N. Y. 9; *Allen* v. *City of Buffalo*, 39 id. 386; *Rumsey* v. *City of Buffalo*, 97 id. 114.)

In accordance with these views the plaintiffs are entitled to judgment vacating the assessments complained of by them respectively, and enjoining proceeding thereunder, etc., and findings and judgment may be prepared, the plaintiff in each case being awarded taxable costs.