THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
BENTON TURNER, Appellant.

The power of the legislature to change rules of evidence as they existed
  at common law and to limit, change and vary existing rules for the
  limitation of actions, is not affected or restricted by the constitutional
  prohibition against the taking of life, liberty or property without due
  process of law.

*It seems* that this constitutional protection to property may be waived by
  the owner, and in that event no one is entitled to set it up for him.

Under the act of 1885 (§ 65, Chap. 448, Laws of 1885), declaring that all
  conveyances theretofore executed by the comptroller on sale of land for
  unpaid taxes, after having been recorded for two years, "shall, six
  months after this act takes effect, be conclusive evidence that the sale and
  all proceedings prior thereto   *   *   *   were regular," and that "all other
  conveyances executed by him shall be presumptive evidence of the
  regularity of all the said proceedings   *   *   *   and shall be conclusive
  evidence thereof from and after two years from the date of recording,"
  the six-months provision operates as to all existing cases as a limitation
  upon the taxpayer's right to assert his claims under pre-existing laws,
  and as to all future cases after the lapse of two years from recording,
  makes what was before presumptive evidence only, conclusive.

The act, therefore, is in its principal aspects one of limitation, and so is
  within the constitutional power of the legislature to enact, both as affect-
  ing future cases and existing rights.

It may not be said, as matter of law, that the time given the taxpayer for
  the enforcement of his rights is unreasonable.

*It seems* that, in the absence of a curative act, an omission by assessors to
  hold meetings for the review of their assessments and to give notice ·
  thereof as required by statute is a jurisdictional defect.

The consequences of such omission are, however, declared by the statute
  (§ 5, chap. 176, Laws of 1851), giving to the person aggrieved a right to
  appeal to the board of supervisors at their next annual meeting, and
  giving that board the right to review and correct such assessment; the
  omission is thus deprived of any other effect than that so given it,
  and the taxpayer is given an opportunity to be heard.

The taxpayer or person aggrieved is presumed to have knowledge of the
  statutory provision; and as the time or place for the meetings of said
  boards are fixed by statute, and as it is also to be presumed that the legis-
  lature intended such notice of the time and place for the hearing to be
  adequate, he has the opportunity to be heard and the notice thereof
  which the constitutional safeguard requires.

It is within the power of the legislature to prescribe the kind of notice
  and the mode in which it shall be given.

In an action commenced in December, 1886, under the act establishing a forest commission (§ 11, chap. 283, Laws of 1885), to recover damages for cutting and carrying away trees from the "forest reserve," the state claimed title under a comptroller's deed, dated in 1881 and recorded in 1882 on sale of the lands for unpaid taxes levied prior to 1871. Defendant showed no title or possession, but claimed that by reason of the alleged omission of the assessors, in making assessments for each of the years 1864 and 1867, to give notice of a review of the assessment or to hold a meeting for that purpose as required by the statutes, and by closing and verifying the assessment prior to the time prescribed, the comptroller acquired no jurisdiction to make the sale. An offer to prove this defense was excluded. *Held,* no error; that conceding a stranger having no title or possession can raise the question, as to which *quære,* the defense was not maintainable, because: First. There was no evidence or offer of evidence that the sale was based upon the taxes levied in those years, and this it was necessary for defendant to show affirmatively to make out the defense. Second. The comptroller's deed was conclusive as to the regularlity of all proceedings prior to the sale. (Chap. 448, Laws of 1885.) Third The owner or party aggrieved had sufficient notice and an opportunity to be heard to meet the requirements of the constitutional provision.

*It seems* that a more formal notice should be given in case of an assessment for a local improvement than that required where the assessment is for the purpose of annual taxation.

Defendant offered in evidence the assessment-rolls from 1872 to 1883, wherein the lands in question were assessed to one S. as resident lands. *Held,* that they were properly excluded. First. They had no bearing upon the question at issue as to whether the lands were occupied or not, as if S. was a resident they would have been assessed to him whether occupied or not. Second. The proffered evidence simply tended to show the assessor's views and was incompetent upon the question of actual occupancy.

*Jewell* v. *Van Steenburgh* (58 N. Y. 85); *Van Rensselaer* v. *Witbeck* (7 id. 517); *Westfall* v. *Preston* (49 id. 349); *Wheeler* v. *Mills* (40 Barb. 644); *Stuart* v. *Palmer* (74 N. Y. 183) distinguished.

Reported below, 49 Hun, 466.

(Submitted October 9, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 24, 1888, which affirmed a judgment in favor of the plaintiff, entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Beckwith, Barnard & Wheeler* for appellant. The court erred in holding that under chapter 448, Laws of 1885, the comptroller's deed was conclusive. (2 R. S. [8th ed.] 1098, § 19; 40 Barb. 644; 58 N. Y. 89, 90; 49 id. 349; 7 id. 517; 25 Hun, 186; Desty on Tax. 579; *Ensign* v. *Barro*, 107 N. Y. 346.) Chapter 448 of the Laws of 1885 is unconstitutional. It deprives taxpayers of vested rights, which are property in every legal sense, without due process of law. (2 R. & L. L. D. 1017; 4 Hill, 147; *Bertholf* v. *O'Reilly*, 74 N. Y. 519; 12 id. 212; *Burch* v. *Newbury*, 10 id. 375; *Stuart* v. *Palmer*, 74 id. 190; *Weimer* v. *Breimbury*, 30 Mich. 201; *Davidson* v. *Bd. of Admrs.*, 17 A. L. J. 223; *Dartmouth College*, 4 Wheat. 519; *Westervelt* v. *Gregg*, 12 N. Y. 209; Cooley on Const. Lim. 355; *Butler* v. *Supervisors*, 26 Mich. 22; *Patten* v. *Green*, 13 Cal. 325; *Philadelphia* v. *Miller*, 49 Penn. 440; *In re N. Y. P. E. P. S. Schools*, 31 N. Y. 574; *Ireland* v. *City of Rochester*, 51 Barb. 414; *In re Ford*, 6 Lans. 92; *Barhyte* v. *Shepherd*, 25 N. Y. 238; *Clark* v. *Norton*, 49 id. 243; *Overing* v. *Foote*, 65 id. 263; *Murray* v. *H. L. I. Co.*, 18 How. [U. S.] 272; Cooley on Taxation, 265; 77 N. Y. 546; 80 id. 572; 68 id. 98.) It was error to exclude the assessment-rolls of the town to show that lot 219 was assessed from 1872 to 1883, inclusive, to Lewis Smith, as resident land, particularly that of the year 1881. (*Hand* v. *Ballou*, 12 N. Y. 541; 5 Hill, 286; 7 Wend. 148; Brown on Assess. and Tax. 350, 351. *Clark* v. *Met. Bk.*, 3 Duer, 241, 249.; *V. C. C. Co.* v. *Murtaugh*, 50 N. Y. 318; 59 id. 356; 12 Abb. [N. S.] 310; 62 Barb. 523.)

*Palmer, Weed & Kellogg* for respondent. The proposed evidence as to the omission of the assessors to meet for review on the third Tuesday of August, 1867, and their verification of the roll in July, 1864, was properly excluded. Such omissions, if they existed, were irregularities cured by chapter 448 of the Laws of 1885. (*Ensign* v. *Barse*, 107 N. Y. 329; *Davidson* v. *New Orleans*, 6 Otto, 101; *Stuart* v. *Palmer*, 74 N. Y. 191; Laws of 1851, chap. 176, § 5; 2 R. S. 72, 993;

*Mitchell* v. *Clark*, 110 U. S. 633; 7 Wait's Actions and Defenses, 228.) The assessment-roll of the town, offered for the purpose of showing that lot 219 was assessed to Louis Smith as resident land, was properly excluded. It was immaterial and could have no bearing upon the question of occupancy, as Smith, being a resident of the town, would be assessed for all the land owned by him in the town, whether "occupied or wholly unoccupied." (2 R. S. [7th ed.] 989, § 1.) Under the evidence the question of actual occupancy was for the jury. (*Smith* v. *Sanger*, 4 N. Y. 577.)

RUGER, Ch. J. This is an appeal by defendant from an affirmance by the General Term of a judgment rendered upon a verdict at circuit for the plaintiff.

The action was commenced in December, 1886, to recover the statutory penalties for cutting and carrying away trees from lot No. 219, township No. 10 in the county of Franklin, being vacant lands constituting a part of the Forest Preserve, and belonging to the plaintiff. (Laws of 1885, chap. 283, § 11.)

The answer set up, first, a general denial, and, secondly, that the *locus in quo* belonged to the defendant.

No evidence was given on the trial that lot No. 219 ever belonged to or was occupied by the defendant, and the controversy thereupon resulted in an effort on his part to defeat a recovery through the alleged weakness of the plaintiff's title. The plaintiff made title to the lot through a comptroller's deed, dated in 1881 and recorded in 1882, purporting to convey the premises in question to the plaintiff in pursuance of a tax sale of non-resident lands, had in 1877, for unpaid taxes levied previous to the year 1871 in township No. 10, Franklin county.

It is contended by the appellant that such deed was invalid and conveyed no title, because, for two years previous to, and at the time of the conveyance, a small portion of such lands were in the possession of an actual occupant who had not been served with notice to redeem as required by the statute. This fact, if proved, would, ordinarily, have invalidated the deed given, and was, therefore, made a prominent issue on the trial.

Much evidence was given on the subject on both sides. The evidence of such occupation related to an inconsiderable por- tion of the lot and was, in itself, extremely vague, indefinite and unsatisfactory. Its force was also much impaired by the testimony of plaintiff's witnesses. A fair question as to whether there had been any legal occupation of any part of these premises during this period was raised for the consideration of the jury upon the evidence, and we think it was properly dis- posed of by them. (*Smith* v. *Sanger*, 4 N. Y. 577.) It was also claimed by the defendant that, by reason of certain alleged irregularities on the part of the assessors in making assessments for the years 1864 and 1867 in this township, the comptroller acquired no jurisdiction to make the sale, and an offer to prove this defense was excluded by the court upon the ground that the comptroller's deed was conclusive evidence of the regu- larity of the proceedings upon which it was based.

The irregularities referred to consisted of the alleged omis- sion by the assessors to give notice of a review of the assessments in the years referred to, or to hold a meeting for such purpose, as required by sections 19 and 20 of volume 2, Revised Statutes (7th ed.) page 992, and closing and verifying the assessment prior to the time provided by statute for so doing. It is answered to this objection, in the first place, that there is no evidence in the case that the sale was based upon the taxes levied in the years referred to.

We think it was essential to the defense attempted to be established, that the defendant should affirmatively show, or offer to show, that the sale was founded upon the alleged irregular taxes. The burden of proving this fact lay upon the party alleging it, and no attempt having been made to prove it, there was no legal defense proved, or offered to be proved, by the defendant in respect to the matter referred to. Showing, or offering to show, that there were irregularities in the assessments for some of the years prior to 1871, had no tendency to show that there were not others, which were valid upon which the sale might have been lawfully made.

A broader ground for the rejection of the evidence offered

is afforded by the effect to be ascribed to a comptroller's deed, after a certain lapse of time, under chapter 448 of the Laws of 1885. That act provides in relation to such conveyances, that " all conveyances that have been heretofore executed by the comptroller. * * * After having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located * * * shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto * * * were regular and were regularly given, published and served according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto and all other conveyances * * * heretofore or hereafter executed, shall be presumptive evidence of the regularity of all the said proceedings and matters hereinbefore recited, and shall be conclusive evidence thereof from and after the expiration of two years from the date of recording such other conveyances." The section then further provides that " all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation as now provided by law on a direct application to the comptroller, or an action brought before a competent court therefor, by reason of the legal payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid." The act, in terms, purports to preserve all existing rights of taxpayers for the period of six months after the passage of the act and to establish a rule of evidence to govern future controversies, which made such deeds presumptive evidence of the regularity of the proceedings upon which they were based, and after two years from the recording, conclusive evidence of the same matters. With reference to the six-months provision, it operates, as to all existing cases, as a limitation upon the taxpayer's right to assert his claims under pre-existing laws, and, as to all future cases, provides that the lapse of two years from recording shall make that which was before presumptive evidence only, conclusive upon the rights of the parties. The act seems to

be, in its principal aspect, one of limitation, and, as such, is within the constitutional power of the legislature to enact as affecting future cases, and, we think, within settled rules, equally within its power as to existing rights. It gives, in all cases, a time for the person aggrieved to establish his rights unaffected by the provisions of the enactment; but provides that after the lapse of a certain time the comptroller's deed shall be conclusive evidence of the regularity of the proceedings upon which it is based. Legislation of such a character has frequently been held within the constitutional power of the legislature to enact.

The power of the legislature to change rules of evidence as they exist at common law, and to limit, change and vary existing rules for the limitation of actions, has been the subject of frequent consideration in the courts, and has been uniformly held not to be affected or restricted by the constitutional provisions prohibiting the taking of life, liberty or property without due process of law. (*Rexford* v. *Knight*, 11 N. Y. 308; *Hand* v. *Ballou*, 12 id. 541; *Howard* v. *Moot*, 64 id. 262; *Terry* v. *Anderson*, 95 U. S. 628; *Mitchell* v. *Clark*, 110 id. 633; *Hickox* v. *Tallman*, 38 Barb. 608; *Webb* v. *Den*, 17 How. [U. S.] 576.)

It was held in *Hickcox* v. *Tollman* that there could be no vested right in a rule of evidence, and that, therefore, the legislature could repeal a statute making a comptroller's deed presumptive evidence of the regularity of the proceedings upon which it was based, without affecting any constitutional right of the grantee in such deed. *Webb* v. *Den* held that a statute, providing that deeds which had been registered twenty years or more, should be presumed to be upon lawful authority, whether legally probated or not, and was constitutional and within the authority of the legislature to make.

Considered as an act of limitation, the only question in relation thereto is whether such limitation is just and gives the claimant a reasonable opportunity to enforce his rights. (See authorities, *supra*.) Under all of the circumstances of

the case it cannot, we think, be said, as a question of law, that the time afforded is unreasonable. Considered as establishing a rule of evidence, the only question for examination is whether property is thereby necessarily taken without due process of law.

It is not contended by the defendant but that if this statute be given its natural meaning and effect, the comptroller's deed vests a valid title to the land in the plaintiff; but it is claimed that the statute is unconstitutional and void as violating that provision of the Constitution which prohibits the taking of " life, liberty or property without due process of law," and it is urged that the exercise of the power of taxation cannot lawfully be employed without giving the taxpayer, at some stage of the proceedings, a right to be heard in relation to the imposition of taxes upon his property.

Conceding, for the purpose of the argument, the correctness of this proposition (*Stuart* v. *Palmer*, 74 N. Y. 183; *Spencer* v. *Merchant*, 100 id. 585; 125 U. S. 356), it is a matter of grave doubt whether a stranger, not being in possession of, or claiming title to the property taken, can raise the question that it has been illegally taken from another. The owner may waive the constitutional protection to his property if he chooses, and, in that event, it is clear that no one is entitled to set it up for him. (44 N. Y. 415; 46 id. 318; 50 id. 240; 52 id. 641.) A stranger cannot be a person aggrieved in such a case, and comes within the general rule of law that only those having a legal interest in the subject of an action can litigate the validity of the title thereto in legal proceedings.

Passing this question, however, and assuming that the defendant had a right to rebut the plaintiff's proof of title, we come to the question whether the owner of the property, if any such there be, has, in this instance, been deprived of his property without due process of law and an opportunity of being heard. It may be conceded that, in the absence of a curative act, an omission by the assessors to hold meetings for the review of their assessments, and to give notice therefor as required by statute, is a jurisdictional defect which, in a

proceeding between the owner and any one claiming a right in such property under a tax sale, renders such sale irregular and void. (*Jewell* v. *Van Steenburgh*, 58 N. Y. 86; *Van Rensselaer* v. *Witbeck*, 7 id. 517; *Westfall* v. *Preston*, 49 id. 349; *Wheeler* v. *Mills*, 40 Barb. 644.) But this principle does not determine the question here presented. The question in hand concerns the power of the legislature to enact rules of evidence and limitation having retrospective effect with respect to causes of action which have not yet been made the subject of legal proceedings, or challenged by anyone having an interest in the property to be affected thereby.

No question is raised over the power of the legislature in relation to general legislation to enact laws and give them retroactive operation, so that the circumstance that they are retroactive alone constitutes no legal objection to their validity. (*Dash* v. *Van Kleeck*, 7 Johns. 477; *Norris* v. *Beyea*, 13 N. Y. 273.) The argument is that a lawful exercise of the taxing power by the legislature requires that notice and an opportunity to be heard before the taxing officers in respect to the imposition of the tax should be afforded to the taxpayer, and the stress of the contention is that the landowner has, by the operation of this law, been deprived of his day in court. Unless, therefore, it can be shown that the taxpayer has been actually or substantially deprived of his opportunity to be heard on the imposition of this tax, the argument fails.

It was said by Judge ALLEN in *Howard* v. *Moot* (64 N. Y. 268) that "while the legislature cannot take from parties vested rights without compensation, the remedies by which rights are to be enforced or defended are within the absolute control of that branch of the government. The rules of evidence are not an exception to the doctrine that all rules and regulations affecting remedies are, at all times, subject to modification and control by the legislature. The changes which are enacted, from time to time, may be made applicable to existing causes of action, as the laws thus changed would only prescribe the rules for future controversies. It may be conceded, for all of the purposes of this appeal, that a law that

should make evidence conclusive which was not so necessarily and of itself, and thus preclude the adverse party from showing the truth, would be void, as indirectly working a confiscation of property, or a destruction of vested rights." (*Hand* v. *Ballou*, 12 N. Y. 541.) The converse of the latter proposition would seem necessarily to follow from the rule laid down and if such legislation did not work a confiscation of property or a destruction of vested rights, it would be sustained as a legitimate exercise of power.

In the *Matter of Van Antwerp* (56 N. Y. 265) it was held that the constitutional provision that a citizen should not be deprived of life, liberty or property without due process of law, was not affected by the exercise of the taxing power. It was said "the act (in question) was an exercise of the taxing power by the legislature, which, for public purposes, is unlimited, except as specifically restrained by the Constitution. * * * All property is held subject to such burdens as may be imposed upon it for public purposes, and the imposition does not deprive the citizen of any rights of property within the meaning of the clauses referred to."

So, also, in *Episcopal Public School* v. *Davis* (31 N. Y. 584) Judge DENIO says, that "in executing the taxing power, the legislature provides such agencies and safeguards against surprise, mistake and injustice as is thought expedient. It is manifestly proper that the taxpayers should have notice of the imposition proposed to be laid upon them, and an opportunity for making suggestions and explanations to the proper administrative board or officer; and this is generally secured in all well-considered systems of taxation. But it is for the legislature to determine and prescribe in every case what shall be sufficient, and there is not, that I am aware of, any constitutional provision bearing on the subject." In the case of *Stuart* v. *Palmer* (74 N. Y. 183) this court laid down the rule, in a case involving the right of taxation to pay for the expense of a local improvement, that the constitutional prohibition against taking life, liberty or property, required that some notice should be given to the landowner and some

opportunity afforded him to be heard in regard thereto. But it was further said in that case, that " the legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice." (*Spencer* v. *Merchant*, 125 U. S. 356.)

A manifest difference exists between the modes of making assessments for local improvements and those providing for annual taxation, and much reason exists why a more formal notice should be given in one case than the other. In one case they are special, transitory and occasional, and in the other regular, fixed and of annual occurrence, known to all people. In one case they become public only when proceedings are instituted, and may escape the notice of the landowners. In the other they occur every year and are as constant in their recurrence as the changes of the seasons. Conceding, therefore, the right of the taxpayers to this opportunity, we think an examination of the statute under which this tax was levied shows that he was not deprived of such notice and opportunity to be heard as the nature of the case required. The provisions of the general statutes require that assessment-rolls in each year shall be completed on or before the first day of August, and notices posted in the town that a copy thereof has been made and left with one of the assessors, where any person interested can see and examine the same until the third Tuesday of August thereafter, and that on that day the assessors will meet at a time and place specified in such notice to review their assessments. (2 R. S. [7th ed.] 992, 993.) The notice required by this act, it will be observed, is not personal or of an absolute character, but is constructive, and the provision for a hearing of the taxpayers by the assessors, is of the most informal and indefinite character. It doubtless gives the taxpayer the right to appear before the assessors, at the time stated, and endeavor to persuade them to modify or abate his assessment. He may attempt to swear off his assessment for personal property, but beyond this a hearing does not seem to give him any legal rights, or a denial of such hearing inflict any absolute legal damage. Section 5,

chapter 176 of the Laws of 1851, provides that in case of the neglect of the assessors to meet for review, as required by the statute, any person aggrieved by an assessment may appeal to the board of supervisors at their next annual meeting, who shall have power to review and correct such assessment. The consequences of an omission by the assessors to hold the meeting are thus expressly declared, and would seem to deprive such omission of any other effect than that given to it by this statute. Ample opportunity is thereby given the taxpayer, if he feels aggrieved in respect to assessments of his property, to be heard before the board of supervisors, who are vested with full power to afford all and any relief which was possessed by the assessors. The taxpayer must be presumed to have knowledge of the provisions of public statutes ; and as the time and place for the meetings of the boards of supervisors are fixed by statute and occur at stated periods, we must presume that the legislature intended such notice of the time and place for the hearing of dissatisfied taxpayers to be adequate notice of the opportunity to be heard.

As the primary object of the constitutional provision is to enable the property owner to be heard by some officer or tribunal in respect to the taxing of his property, having power to relieve him, before he can be deprived of it, he cannot justly claim that he has been unlawfully assessed and taxed, if such opportunity has been offered him and he has negligently omitted to avail himself of it. It must be assumed that the taxpayers know the law of the state in respect to the time and method of assessing property and levying taxes; and if they are presumed to know the provisions for the review of assessments, they must be equally presumed to know the remedy given by the law for an omission by the assessors to hold the meeting for such review.

We are, therefore, of the opinion that the opportunity afforded the taxpayer to appear before the board of supervisors and challenge the legality and fairness of his assessment, was a satisfaction of his rights in respect to a hearing on the subject. It would have been competent for the legislature,

while authorizing the imposition of taxes, to have omitted altogether the provisions requiring notice and a meeting by the assessors to review assessments, and to have provided only for a hearing before the supervisors in the first instance. Having full authority over the subject, it could lawfully provide for the way and manner of hearing the taxpayer, and in default of a hearing as provided, it could declare the consequences of such default and provide for a hearing in some equivalent mode. So long as the taxpayer is given the equivalent, therefore, the legislature has done all that is required of it under any view of the taxpayer's constitutional rights. (*Spencer* v. *Merchant*, 100 N. Y. 585.) It was held in the *Matter of De Peyster* (80 N. Y. 565), that an assessment for the expenses of building a sewer is not invalid because of omission to give to the owners of lots assessed a personal notice that an assessment is to be imposed. The legislature may prescribe what the notice shall be, and when provision has been made for notice by publication before the final confirmation of the assessment, and an opportunity afforded to make objections within a time specified, and this has been complied with, no constitutional right of the taxpayer has been violated by such proceeding.

This case seems to be an authority for the views above presented. But more than this — after the tax has been returned to the comptroller, the taxpayer has still the right, both before and after the sale of his property, to appear before that officer and make proof of any illegality in the tax levy, and demand that such tax, and any sale made thereon, shall be canceled by him. (§§ 83, 85, chap. 427, Laws of 1855; 2 R. S. [7th ed.] 1032.) And finally the act of 1885 itself provides for the exercise of the right of the comptroller to cancel taxes and sales illegally made, where the taxes have been legally paid or where the town or ward had no legal right to assess the land. These rights were not only open to the taxpayer to exercise at any time previous to the act of 1885; but the right of all persons to exercise them was also preserved in all cases for six months after the passage of that act.

Any damage that may occur to the citizen by reason of a change in the statutory limitations, befalls him in consequence of his neglect to avail himself of the remedies which the law leaves open to him for a prescribed period, and not by reason of the operation of the law itself. It would seem that the right of a property owner to assert his title to property claimed by him, after such ample opportunities to protect such right had been afforded, could be regulated by a law of limitation without incurring the objection that his property had been taken without due process of law.

Any error in the admission by the trial court of the answer to the question "Who did they say they measured for?" put to the defendant's employes, was cured by the subsequent admission of the defendant that the witnesses were in his employ.

The writings offered in evidence by the defendant, purporting to be unauthenticated copies of papers in the comptroller's office, were properly rejected by the court. No legal proof that they were such copies was given, and the case does not show that they were in any way material.

The assessment-rolls of the township from 1872 to 1883, offered in evidence by the defendant to show that lot No. 219 was assessed to one Smith as resident lands, with a view of raising a presumption that they were actually occupied during that period, were properly excluded by the court. The question at issue was whether the lands were actually occupied or not, and the proposed evidence had no tendency to prove this fact, for if Smith was a resident, the lands would have been assessed to him whether occupied or not. In any view, the evidence simply tended to show that the assessors supposed the land was occupied, and that fact was clearly incompetent upon the issue of actual occupation.

It follows from the views expressed that the judgment should be affirmed.

All concur.

Judgment affirmed.