DASEY v. SKINNER *et al.*

(*Supreme Court, General Term, Fourth Department.* September 20, 1890.)

1. MUNICIPAL CORPORATIONS—WATER-RENTS.
　　The term "water-rents," used in Laws N. Y. 1875, c. 181, § 13, which empowers the water commissioners of municipal corporations to establish a scale of water-rents against different classes of buildings, according to their dimensions, value, exposure to fire, etc., is to be construed as synonymous with "water-rates," and, so construed, the protection afforded to the owner of a house by the water supply

in case of fire is a sufficient benefit to sustain an assessment for water-rates against him, though no water is taken or used in the house.

**2. SAME.**

An assessment made June 19, 1889, for water-rates against the owner of a house fronting on a street in which water-pipes are laid, but in which house no water is taken or used, is valid, under Laws N. Y. 1889, c. 507, passed June 15th, which authorizes the commissioners to assess water-rates on all property abutting on streets where water-pipes are laid.

**3. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.**

The seizure of a householder's property for the non-payment of an assessment for water-rates, levied against him, without notice, and without an opportun.*y to be heard in defense, is a taking of property without "due process of law," within Const. N. Y. art. 1, § 6.

Case submitted on agreed statement, under Code Civil Proc. N. Y. §§ 1279, 1280, wherein Timothy Dasey is plaintiff, and William I. Skinner and others, water commissioners for the village of Little Falls, are defendants.

*McEvoy & Jones,* for plaintiff.   *J. D. Beckwith* and *A. M. Mills,* for defendants.

KENNEDY, J.   The defendants, as water commissioners for the village of Little Falls, caused to be constructed a system of water-works for said village, under and in pursuance of the provisions of chapter 181 of the Laws of 1875, and completed the same prior to June 26, 1888.   On that day the said commissioners established a scale of rents or water-rates to be charged and paid to them from time to time for the supply of water appropriated to different classes of buildings in said village, as provided by section 13 of said act.   By these, rates were charged on all classes of property in said village, including vacant lots, and all buildings situate on the line of all streets and alleys, and all business places through which water-mains were laid, and from which a supply of water could be taken, whether the same was taken or not for use upon such lots, or in such buildings.   These rates from July 1, 1888, to May 1, 1889, were as follows: Each dwelling-house occupied by one family, with the privilege of one faucet, and for domestic purposes only, $5; each additional family, with the same privileges, $3.   The plaintiff was the owner in fee of lands situate on Furnace street, having a frontage thereon of 53 feet, upon which was standing a two-story double house, actually occupied by four families.   Furnace street is a public street in said village, through which the water-mains were laid.   There was no water taken or used in said house or on said premises from said main.   On the 19th day of June, 1889, the defendants, as such commissioners, made an assessment roll of their assessment of water-rates against the several persons named therein as own-ers of the several parcels of real estate therein mentioned for the period between July 1, 1888, and May 1, 1889.   All the lots and dwellings facing on streets through which the mains were laid were assessed according to said rates.   The plaintiff was assessed for his premises aforesaid on Furnace street, $13.34.   This not having been paid within the time provided by law, a warrant for its collection was duly issued and delivered to the collector of the village, and he levied upon and converted to the payment of said tax and his fees property of the plaintiff of the value of $14.04.   This sum the plaintiff claims to recover upon the ground that the proceedings of the defendants, as such commissioners, were illegal, and they therefore became trespassers. The first contention on the part of the plaintiff is that the defendants had no authority to levy a tax for water-rates, except where water was actually taken and used upon the premises; and he seeks to support the claim upon the peculiar phraseology of section 13, before referred to.   This section provides that the said commissioners shall establish a scale of rents, to be charged and paid from time to time for the supply of water, to be called "water-rents," and appropriated to different classes of buildings in reference to their dimensions, value, exposure to fire, etc.   Counsel argues that the term "rents" im-

plies the necessity of an actual use by the plaintiff, in order to create a liability or to confer power upon the commissioners. It may be strictly true that the term "rents," as ordinarily used, means a return or compensation for the possession of some corporeal or incorporeal estate surrendered for a compensation paid or agreed to be paid therefor. We think this definition too narrow and impracticable when applied to the case in hand to determine its meaning within the intent and purpose of the statute where it is used; the whole act must be construed in the light of the circumstances of its enactment and the end sought to be attained. The emergencies intended to be met and the security to all the village inhabitants to be provided for by a common water supply, create other burdens of legitimate charge beyond that incident to its actual use for domestic purposes. One object, and I think it may be fairly stated as paramount, is the protection of the life and property of each individual living within the village limits, and having a right to call for the protection it affords in the hour of peril. While it may be true that a resident owner of buildings within the corporate limits may not actually appropriate the water provided by drawing it from a faucet in his living-room, still it does not follow he should, therefore, be freed from the expense of the maintenance of the system. The protection it furnishes in case of fire, and which he, as a resident, has the right, when the emergency demands, to invoke, is of greater benefit than the simple daily use for household purposes. We are, therefore, of the opinion that the term "water-rents" is to be construed as synonymous with "water-rates," and that the benefits to the plaintiff referred to are of a kind to confer upon the commissioners the power to fix the rates and levy the tax, and that this power is conferred by the statute cited.

The assessment was made on the 19th day of June, 1889, and the tax levied. By chapter 507 of the Laws of 1889 it is especially provided that the commissioners may establish a scale of water-rates for the use of water; also rates to be assessed upon all real property abutting on the streets where the water-pipes are laid. This act took effect on the 15th day of June, and was in force at the time the assessment was made and tax levied. We, conclude, therefore, that the commissioners had power to levy the tax.

The further claim is made by the plaintiff that he having been given no opportunity to be heard upon the question of a levy of said tax, the taking of his property was without due process of law, and, therefore, illegal. We think him right in this contention. Section 6 of article 1 of the constitution provides, "no person shall be deprived of life, liberty, or property without due process of law." In this case no day for hearing was given the plaintiff. He had no opportunity to present his claims against the levy of the tax, nor does it appear that he had any knowledge or information that any tax was contemplated against him. The acts of the defendants were, therefore, in violation of the constitutional provision quoted, and simply acts of usurpation. *Stuart* v. *Palmer*, 74 N. Y. 183; *People* v. *Turner*, 117 N. Y. 227, 22 N. E. Rep. 1022.

Judgment is, therefore, ordered for the plaintiff for $14.60, that being the value of the property wrongfully converted by the defendants, and interest thereon, but without costs. All concur.