The judgment must be affirmed, with costs, with leave to defendant, in twenty days after notice of judgment on payment of costs below and of this court, to withdraw demurrer and answer over.

LANDON and MAYHAM, JJ., concurred.

| 59 | 129 |
|----|-----|
| 128a | 334 |
| 59 | 129 |
| 25ap | 38 |

HARRIET E. JOSLYN, AS ADMINISTRATRIX, ETC., APPELLANT, *v.* PETER H. PULVER AND OTHERS, RESPONDENTS.

*Comptroller's tax sale — the deed, under chapter 448 of 1885, is not conclusive evidence of title in a case in which the tax has been paid — word "paid" written on assessment-roll.*

In an action brought to recover for the cutting of trees upon land which had been sold for the alleged non-payment of taxes by the comptroller of the State of New York, evidence was given by the defendants tending to show that the taxes upon the land in question were paid before the return thereof was made to the comptroller, under whose deed the plaintiff claimed to be entitled to recover in the action.

Upon the trial the plaintiff's counsel asked the court to instruct the jury that the comptroller's deed, having been on record in the clerk's office of the county in which the lands were situated over ten years, was, under chapter 448 of the Laws of 1885, conclusive evidence that the assessment was regularly made and levied, and that the sale was regularly made, which request to charge the court qualified by stating that the deed was not conclusive evidence that the taxes were not paid or were not improperly levied.

*Held,* that the qualification made by the court was proper. (MAYHAM, J., dissenting.)

That while the legislature might, by statute, cure omissions and irregularities in the proceedings relating to the assessment and levying of taxes where it might have originally dispensed with such proceedings, yet the fact of non-payment of the taxes was a jurisdictional fact, and not a mere irregularity; that the legislature could in no case authorize the comptroller to sell lands for the non-payment of taxes, except upon actual non-payment; nor could the legislature

make valid a sale of lands for the non-payment of taxes where such taxes had, in fact, been paid.

That the six months' limitation prescribed by the act of 1885 did not constitute a bar to the right of the defendant to interpose a defense of payment of the taxes; nor could the State require an owner to disprove an *ex parte* statement of its officer within a definite period of time, whether he had notice or not of such declaration, or else to surrender his estate. (MAYHAM, J., dissenting.)

That the proper office of a statute of limitations is to put an end to claims which are not asserted within a reasonable time, but not to put an end to defenses to such claims.

The entry of the word "paid" in the handwriting of a deceased collector of taxes, upon the line upon an assessment-roll on which an assessment and tax in question are entered, is competent evidence of payment of the tax when it is shown that it was the custom of the collector to make such an entry upon the receipt of payment of the tax.

APPEAL by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of Warren on the 23d day of April, 1889, with notice of an intention to bring up for review upon such appeal the order allowing the defendants to amend their answer on the trial, and also an order granting the defendants an allowance of $750 as an extra allowance of cost; also an appeal from an order denying the plaintiff's motion for a new trial, made upon the minutes of the court and entered in the Warren county clerk's office on May 18, 1889, after a trial before the court and a jury at the Warren County Circuit on April 15, 1889, at which a verdict was rendered for the defendants.

The action was for trespass in wrongfully entering upon lands of plaintiff's grantor and assignor, and cutting and converting wood and timber, and for the recovery of treble damage, under the provisions of section 1668 of the Code of Civil Procedure.

The complaint alleged that the defendants were copartners in the lumbering business, and, that, without leave, they entered upon a tract of wild land belonging to Elizabeth Miller and Elizabeth F. Smith, and wrongfully and unlawfully cut and carried away a large quantity of timber and trees, standing and growing thereon; and cut said timber and trees into logs, and girdled and stripped and pealed the park from the hemlock trees and logs; and wrongfully and unlawfully took and carried off from such land and premises such bark and logs without the consent of the owners, to their damage of $5,000; and claimed judgment, under the provisions of sections 1667 and 1668 of the Code of Civil Procedure, for $15,000.

The answer denied all the allegations of the complaint, except as therein expressly stated, admitted or qualified, and on information and belief denied the copartnership, and denied any information sufficient to form a belief as to whether Miller and Smith were joint owners, as alleged; also as to whether they conveyed the premises described in the complaint to the plaintiff, and also sold him the claim for damage as therein alleged.

The chief controversy on that trial was, whether the lands on which the timber and bark was concededly cut, and from which the defendants had taken them, or caused them to be taken, were the lands of the plaintiff as described in the complaint.

The parties respectively introduced the conveyances under which they claimed title to the premises where the timber was cut, and there is much conflicting and unsatisfactory oral evidence bearing upon the question of location.

*James C. Rogers*, for the appellant.

*H. A. Howard* and *J. S. L'Amoreaux* for the respondents.

LANDON, J.:

The plaintiff's right to recover for the trees cut and carried away by the defendants depended upon the question whether the intestate had established title to the lands upon which the trees stood. That title depended upon the validity and effect of two deeds from the comptroller of the State to Gerrit Smith, the first executed in 1856, the second in 1869, the first recorded in the Warren county clerk's office in 1859, and the second in 1869, both purporting to be made because of the non-payment of taxes assessed upon the lands described therein, which description embraced the *locus in quo*. The taxes, upon the non-payment of which the lands were sold by the comptroller, were assessed as upon non-resident lands. The defendants claim title under the comptroller's deed of 1834, and gave evidence tending to show that at the time the taxes were assessed under which the deeds to Gerrit Smith were given, the lands were occupied under the defendants' grantor.

The learned trial judge submitted the question to the jury, upon the evidence, whether, at the time the assessment was made and levied under which the deeds to the plaintiff's grantor were given,

the lands were actually occupied by a Mr. Ralph under Abel French, the defendants' grantor.

Evidence was given by defendants tending to show that the taxes upon the lands in question were paid before the return was made to the comptroller, under whose deeds the plaintiff claims. The trial judge submitted the question of fact to the jury whether such taxes were actually paid.

The trial judge held and instructed the jury that if the lands were occupied under the owner at the time they were assessed and taxed as non-resident lands, that the taxes were void, and the deeds based thereon also void. And that if the taxes had actually been paid before return of this non-payment was made to the comptroller, his subsequent deeds of the lands were void. The jury found for the defendants.

The plaintiff's counsel asked the court to instruct the jury that the comptroller's deeds to Gerrit Smith, under whom plaintiff derived title, having been on record in the clerk's office of the county in which the lands are situate over ten years, are, under chapter 448, Laws of 1885, conclusive evidence that the assessment was regularly made and levied, and that the sale was regularly made. The court: " I will so charge of the regularity of the sale, but not conclusive that the taxes were not paid, or were not improperly levied." The plaintiff excepted to the refusal. The court also held that the act in question is not intended to cure jurisdictional defects, but only relates to matters of the form of the proceedings.

We think the rulings of the trial court were right. The plaintiff contended that, by virtue of chapter 448, Laws of 1885, the comptroller's deeds, under which the plaintiff claims, were validated and made unimpeachable either by proof that the lands were occupied, or that the taxes had, in fact, been paid. The act provides that: "All such conveyances that have been heretofore executed by the comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the comptroller that shall have remained in force for two years after the last day allowed by law to redeem from such sale shall, six months after this act takes effect, be con-

clusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act." This act and the act of 1855, of which it is an amendment, are acts " in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes." Occupied lands are not the lands of non-residents. (1 R. S., m. p. 389, § 3 ; *People ex rel. Barnard* v. *Wemple*, 117 N. Y., 77.) If these lands were occupied at the time the assessment was made and the tax levied, they were not " lands of non-residents," and the act in question has no application.

But the jury, under the charge of the court, may have found that the lands were non-resident lands, but that the tax was paid. As the comptroller's deed recites the jurisdictional fact of the non-payment of the tax, if that recital is conclusive evidence of it, any common-law evidence that it had been paid was erroneously received, and the verdict based upon such evidence cannot be upheld. It is held that the legislature may by statute cure omissions and irregularities in such proceedings in the assessment and levying of taxes as it might have originally dispensed with. (*Ensign* v. *Barse*, 107 N. Y., 329.) It is also held that the provision in chapter 448, Laws of 1885, that the comptroller's deed " After having been recorded for two years * * * shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto * * * were regular," gave to the taxpayer six months in which to question the regularity of the proceeding, and was thus a limitation upon his rights in that respect, and barred him from subsequently objecting upon the ground of mere irregularities. (*People* v. *Turner*, 117 N. Y., 227.)

But the fact of non-payment is a jurisdictional fact, and not a mere irregularity in the proceedings. Unless there is default in payment of the tax the comptroller has no jurisdiction to sell the lands. As the legislature could in no case authorize the comptroller to sell lands for non-payment of taxes except upon actual non-payment, so after a sale by him of lands as upon non-payment when in fact there had been payment, the legislature, within the cases cited,

could not ratify or validate such a sale. For what the legislature could not originally authorize it could not subsequently ratify and validate. If, by any refinement of s tatutory limitations or rules of evidence, the State can ultimately confiscate the property of an individual in a case where it never had jurisdiction to proceed at all, the constitutional guaranty of due process of law would yield to legislative despotism. As said in *Howard* v. *Moot* (64 N. Y., 268), and repeated in *People* v. *Turner* (117 id., 235) : " A law that should make evidence conclusive, which was not so necessarily in and of itself, and thus conclude the adverse party from showing the truth, would be void, as indirectly working a confiscation of property or a destruction of vested rights."

But the act of 1885 further provides : " But all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, as now provided by law, on a direct application to the comptroller, or an action brought before a competent court therefor, by reason of the legal payment of such taxes." It is claimed that the defendants had six months in which to apply to the comptroller or the court for relief against the comptroller's deed " by reason of the legal payment of such taxes," and having failed to do so the statute of limitations bars their right to rely upon such a defense, and the comptroller's deed is conclusive evidence that the taxes had not been paid. What has already been said answers these positions. We cannot suppose that the State has power to spoliate the citizen by commanding that its own *ex parte* declaration of an untruth must be disproved by the victim of it within a short day, whether he has notice or not, or else he must surrender his estate. Estoppel sometimes promotes justice by suppressing the truth, but always at the expense of him who told the untruth. Clearly if the State has made a mistake in asserting a jurisdictional fact to the prejudice of the citizen, it cannot, without subverting due procsss of law, deprive him of the right to show the truth whenever and wherever any attempt to deprive him of his property is based upon the untruth. The recital of a jurisdictional fact in a judgment is only *prima facie* evidence of it. (*Ferguson* v. *Crawford*, 70 N. Y., 253.)

The individual who pays his tax has the right to rely upon complete exemption from any proceedings against his land as for

non-payment.   If the collector and county treasurer make false returns, the individual is put upon no inquiry respecting them. It is time enough for him to act when he has notice that action is necessary.   In the present case it does not appear that the defendants had any such notice except by the commencement of this action.

The proper office of a statute of limitations is to put an end to claims which are not asserted within a reasonable time, not to put an end to defenses to such claims.   Time is one of the muniments of the possessor's title and the destroyer of the non-possessor's claim.   We do not think the rule should be reversed so as to make the claim stronger as it becomes staler.   Limitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims.   (Cooley's Const. Lim., m. p. 366.)   Here deeds which for more than twenty years were not worth asserting are claimed to be resurrected and validated by statute.   But a legislative *fiat* cannot transfer A's property to B under the guise of confirming invalid tax sales.   (*Cromwell* v. *MacLean*, 34 N. Y. St. Rep., 85.)   The statutes conferring authority upon the comptroller to cancel tax sales are for the protection of the purchaser, not of the taxpayer.   (*The People ex rel. Wright* v. *Chapin*, 104 N. Y., 369.)

Objection was taken to the admission of a copy of the copy of the assessment-roll filed in the town clerk's office of the town of Lucerne for the year 1856.   Evidence was given tending to show that the roll for that year filed in the county treasurer's office had been destroyed by fire, and that the copy thereof filed in the town clerk's office had been lost.   Such being the case the verified copy of the copy in the town clerk's office was the best evidence which the nature of the case admitted.   The plaintiff cites *People ex rel. Wright* v. *Chapin* (38 Hun, 272).   That case did not hold that in no case could the copy in the town clerk's office be used, but held that if it varied from the original roll in the county treasurer's office, or from the return made to the comptroller from the original roll, the original roll, and in case of its loss, the return, should prevail.   Here no return from the original roll was produced from the comptroller's office.

Objection is taken to the admissibility of some of the evidence tending to show payment.   The assessment-roll for the year 1860

was produced, the collector was shown to be dead. Upon the line upon which the assessment and tax were entered the word "paid," in the deceased collector's handwriting, was entered. Evidence tending to show that it was his custom to make such an entry upon receipt of payment was given. We think the entry was admissible. (*Livingston* v. *Arnoux*, 56 N. Y., 507; *Leland* v. *Cameron*, 31 id., 115.) Another assessment-roll for the year 1858 was produced in which was written the word "paid" upon the line upon which the assessment and tax were entered. The collector testified that he made the entry; that he made no such entry, except upon payment of the tax, but that he had no recollection of the transaction. This entry also was admissible. (*National Ulster County Bank* v. *Madden*, 114 N. Y., 280.)

Objection is also taken to the sufficiency of the evidence to show that the lands were occupied at the time of the assessment and tax. We think the evidence sufficient to justify the presentation of the case to the jury. (*Smith* v. *Sanger*, 4 N. Y., 577.)

The judgment should be affirmed, with costs.

LEARNED, P. J., concurred.

MAYHAM, J. (dissenting):

The first three points made by the appellant for the reversal of this judgment relate to the alleged insufficiency of the answer and alleged error in allowing the defendants to amend the same on the trial.

We think the answer was sufficient to put the allegation of the plaintiff's complaint in issue. Assuming that the defendant's denial of "each and every allegation in the plaintiff's complaint contained, except as hereinafter expressly admitted, stated or qualified," is neither a general or specific denial, and not such a denial as is provided for in the Code (*People* v. *Snyder*, 41 N. Y., 400; *McEncroe* v. *Decker*, 58 How., 250), and the denial upon information and belief of the copartnership alleged in the complaint, is not the form of denial authorized by section 500 of the Code of Civil Procedure, yet as no motion was made to strike out these defective allegations in the answer, or for judgment on that account, and as the second, third and fourth subdivisions of the answer denies any knowledge or information sufficient to form a belief, and each concludes with

an express denial of the matters which it purports to answer, the whole answer taken together must be held sufficient to put in issue the allegations of the complaint.

Nor do we think the allowance of an amendment of the answer on the trial error. Section 723 of the Code of Civil Procedure authorizes the court at the trial to allow an amendment of pleadings in the exercise of a sound discretion where justice will thereby be promoted (*Rosenwald* v. *Hamerstein,* 12 Daly, 377); and as the plaintiff in this case made no proof that she was misled to her prejudice by the amendment, it must be assumed that the discretion was properly exercised. (Code of Civ. Pro., § 539.)

The plaintiff claims title to the *locus in quo* under two deeds from the comptroller of the State of New York to Gerrit Smith, alleged to have been given on tax sales, one dated the 6th day of March, 1856, and purporting to convey 208 acres, conveyed by the following description : "Also two hundred and eight (208) acres to be laid out as aforesaid, being the south part of subdivision No. four of lot No. five (5) in the twenty-fifth allotment of the Kayaderosseras Patent."

The other deed bears date the 13th of January, 1869, and purports to convey 150 acres described in the deed as follows : "One hun dred and fifteen acres, being the north part, seventy-five acres, and west part, forty acres, subdivision No. four (4), lot No. (5), twenty-fifth allotment, Kayaderosseras Patent."

Gerrit Smith, by his will, devised the lands described in these conveyances in and by the residuary clause of the same, one-half to his wife, and one-quarter to his son, Green Smith, and one-quarter to his daughter, Elizabeth L. Miller, each taking an undivided interest as above set forth; Green Smith, in and by the fifth or residuary clause in his will, devised and bequeathed all the rest, residue and remainder of his estate to his wife, Elizabeth F. Smith.

Elizabeth S. Miller and Elizabeth F. Smith, by quit-claim deed, dated the 24th of July, 1886, conveyed to Ai Joslyn the land described therein, as follows : "All that tract, parcel or piece of land situate in the county of Warren, and State of New York, being forty acres in west part, seventy-five acres in north part, and two hundred and eight acres in south part of subdivision No. 4 of lot No. 5 in 25th

allotment of Kayaderosseras Patent; also the right to collect damages for past trespass."

The grantors in the last-mentioned deed also conveyed by quit-claim to the grantee therein, on the 22d of July, 1886, another piece of land described as follows: " All that tract, piece or parcel of land, situate in the county of Warren, and State of New York, being the south half of 250 acres in subdivision 3 (now known as sub. 2 — the McOmber lot), lot 6, 25th allotment, Kayaderosseras Patent. All right to collect damages for past trespass on the above described land is hereby conveyed."

The plaintiff also put in evidence a warranty deed from Charles. Newcomb and wife, to Calvin Joslyn, purporting to convey the " equal undivided *one-third part* of all that certain tract, piece or parcel of land situate, lying and being in the town of Luzerne, and is a part of subdivision No. 4 in Great Lot No. 5, in the 25th Great. Allotment of the Kayaderosseras Patent." The ₂lot is further described in this deed by metes and bounds, and as the same lot described in a deed dated December 9, 1865, given by Charles. Newcomb and wife to Abner Wright, Jr.

The plaintiff also put in evidence map of the allotment, with particular description of lots Nos. 4, 5 and 6 in that allotment. The plaintiff also put in evidence a certificate of sale by the sheriff of Warren county, on an execution against Aaron G. Murray, Jr., and John Cameron to Ai Joslyn of all the right, title and interest of Aaron G. Murray and John A. Cameron, or either of them, on the 19th day of May, 1877, of, in and to the real estate described as follows: " The equal undivided one-third part of that piece or parcel of land described as follows : " Here follows a description of the land sold, described as 150 acres, " being the same premises conveyed to John A. Cameron by Aaron G. Murray, Jr., and wife, by deed November 9th, 1869."

The defendant claims title through a deed from Abel French, dated October 1, 1880, who claimed to derive his title from Solomon W. Russell and wife, dated April 26, 1837, who claimed title under two deeds, one from the comptroller of the State, dated 11th day of February, 1834, and a quit-claim deed from Peter Smith, dated the 9th of November, 1833. Neither of these deeds seem to have been recorded.

The learned judge at the trial held that the plaintiff, by his evidence, had made out a *prima facie* title to all of subdivision 4 and great lot 5 of the twenty-fifth allotment of the Kayaderosseras Patent, on which the alleged trespass was committed, but that *prima facie* title was attacked by the evidence of the defendant tending to show that the tax sales to Gerrit Smith, through whom the plaintiff claims title, were defective, and did not convey a valid title as against French, to whose rights the defendant succeeded under a deed from him.

The plaintiff insists that the tax sale to Smith was conclusive evidence of Smith's title, and that it cannot be assailed in this action ; and that it was error to allow evidence of deeds and other papers offered by the defendant tending to show title in defendants and their grantors, or evidence tending to attack the regularity of the comptroller's deed to Smith, and of the assessments under which the sales were made for which the comptroller's deeds were executed to Smith, and that the judge's charge relating to that subject was erroneous ; as we have seen the comptroller's deeds to Smith were dated, respectively, March 6, 1856, and January 19, 1869, and recorded on the 19th day of March, 1859, and on the 3d of November, 1869, in Warren county clerk's office.

It does not seem to be disputed that these deeds cover the land on which this timber was cut, but the contention of the defendants is that the comptroller had no right to sell these lands under the assessment under which he assumed to advertise and sell the same, and that the purchaser at that sale could get no greater title than the comptroller had a right to sell under the assessment, the seventy acres claimed by French, as that was no part of the Murray lot, on which the assessment was made.

There is great force in this contention, unless all parties are *concluded* by the comptroller's deed from attacking conveyances under it.

By the provisions of chapter 448 of the Laws of 1885, which amends chapter 427 of the Laws of 1855, section 65 of that chapter is amended so as to read as follows :

" Such conveyances shall be executed by the comptroller under his hand and seal, and the execution thereof shall be witnessed by the treasurer or deputy comptroller, and all such conveyances that have been theretofore executed by the comptroller, and all con-

veyances of the same lands by his grantees or grantee therein named, after having been recorded for two years in the office of the clerk of the county in which the lands thereby conveyed are located. And all outstanding certificates of a tax sale, heretofore held by the comptroller, that shall have remained in force for two years after the last day allowed by law to redeem from such sale, shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served, according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto, and all other conveyances or certificates heretofore or hereafter executed or issued by comptroller shall be presumptive evidence of the regularity of all the said proceedings and matters hereinbefore recited, and shall be conclusive evidence thereof from and after the expiration of two years from the date of recording such other conveyances, or of four years from and after the date of issuing such other certificates."

This section then provides that such certificates are subject to cancellation as now provided by law, on a direct application to the comptroller. Section 2 of this amendment makes it applicable to Warren county. Stronger language could hardly have been employed by the legislature to make such deeds conclusive, after the lapse of two years from the date of recording, than is used in this amendment. This amendment makes the conveyance conclusive evidence from and after the expiration of two years after the date of the recording of the deed.

The deeds to Smith were recorded in the proper clerk's office more than two years before the alleged cutting of this timber, and the title under them to the lands conveyed became absolute in the grantee; and as there does not appear to have been any proceeding instituted before the comptroller under this act to cancel such conveyances, we do not see how they can now be assailed collaterally in this action.

Webster defines conclusive in law to be "that of which, from its nature, the law allows no contradiction or explanation, an inference which the law makes as peremptory that it will not allow it to be overthrown by any contrary proof, however strong."

If, then, as was conceded by the learned judge at the trial, these deeds conveyed the *locus in quo*, so that proof of the deeds and the cutting of the timber made a *prima facie* case for the plaintiff, then the fact that the deeds of Gerrit Smith were properly recorded more than two years before the commission of the alleged trespass, made that case which before the act of 1885 was *prima facie*, conclusive, and precluded all inquiry into the preliminary steps leading up to the making of the deed, and, indeed, all inquiry in an action at law as to whether the deed was upon the lands against which taxes were in arrears.

In other words, so far as these parties were concerned in this action, it gave to the deeds absolute verity and excluded all inquiry into their regularity, leaving the parties to stand alone upon the deeds. However harshly this may appear to operate upon the rights of the parties, it seems to be the only construction of which that amendment of 1885 is capable.

The object of the legislature obviously was to quiet tax titles and cast upon the landowners the burden of moving promptly after the recording of comptroller's deeds given on tax sales, either before the comptroller, to have the error, if any has been committed, corrected, or by some other method of procedure, to correct the error within two years after constructive notice, by the recording of the deed, or that the deed shall become conclusive. That act was, in its nature, a short statute of limitations, and it would seem that relief must be sought before it attached, or the remedies were lost.

If the act of 1885, under the conditions specified, made the deed to Smith conclusive, then inquiry into the validity of the assessment, and the circumstances under which the comptroller's deeds were given, was improper and inadmissible ; and the receipt of evidence on the trial, under the plaintiff's objections, tending to establish that fact, was an error.

In the *People* v. *Turner* (49 Hun, 466, affirmed in 117 N. Y., 227) the trial court excluded evidence offered of irregularities in the assessments to defeat a comptroller's deed on the ground that the deed was conclusive, and the General Term and Court of Appeals held that the decision was correct, and the evidence was properly excluded, and the General Term treated the act of 1885 as a short statute of limitation, and upon that subject use this language : " It

will be seen that the statute acted as a statute of limitations." And in discussing the same question, RUGER, Ch. J., in delivering the opinion of the Court of Appeals, after quoting from the section above referred to, of chapter 448 of the Laws of 1885, uses this language : " With reference to the six-months provision, it operates, as to all existing cases, as a limitation upon the taxpayer's right to assert his claim under pre-existing laws, and, as to all future cases, provides that the lapse of two years from recording shall make that, which was before presumptive evidence only, conclusive upon the rights of the parties. The act seems to be, in its principal aspect, one of limitation, and, as such, is within the constitutional power of the legislature to enact as affecting future cases, and we think, within the settled rules, equally within its power as to existing rights. It gives in all cases, a time for the person aggrieved to establish his rights, unaffected by the provisions of the enactment; but provides that, after the lapse of a certain time, the comptroller's deed shall be conclusive evidence of the regularity of the proceedings upon which it is based. Legislation of such a character has frequently been held within the constitutional power of the legislature to enact."

Many other questions are raised on this appeal, among which, is the other defendant's right, acquired under the conveyances under French's deed, through which they claim, which we are not called upon to examine, if we hold, as I think we must, that the judge erred in allowing the evidence tending to attack the regularity of the comptroller's deeds to Smith, through which the plaintiff claims. Those deeds, as we have seen, cannot be assailed in that manner, and the allowance of evidence for that purpose was error, for which a new trial should be granted.

I think the judgment should be reversed and a new trial ordered, costs to abide the event.

Judgment affirmed, with costs.