(75 N. W. Rep. 262.)

---

THOMAS C. KELLY *vs.* CARGILL ELEVATOR CO.

Opinion filed April 23rd, 1898.

**Evidence—Best and Secondary.**

> It is competent in an action for the conversion of wheat by defendant to prove the contents of entries showing amount of grain purchased, the grade, the price, and persons from whom purchased, made by the agent of the defendant at the time of the transaction in the stubs of wheat tickets kept by defendant for that purpose, such entries being the ones from which the agent made up his report to the home office, it appearing that the original entries themselves have been destroyed by defendant.

Appeal from District Court, Traill County; *Pollock,* J.

Action by Thomas C. Kelley against the Cargill Elevator Company to recover for the conversion of five hundred and forty-eight bushels of wheat. Verdict and judgment for plaintiff and defendant appeals.

Affirmed.

*Benton & Bradley,* for appellants.

The stub book kept by denfendants agent was not primary evidence. In the case of a check, the check would be the best and primary evidence and the stub secondary evidence only. The stubs are not admissible because they are not entitled to be regarded as books of account, and therefore, not original or

primary evidence. *Wilson* v. *Gooding*, Wright, 219. The copy of a copy of a destroyed or lost document is not receivable in evidence, even though the absence of the first copy has been satisfactorily explained. Best on Evidence, § 483; *Reeve* v. *Long*, Holt, 286; *Leibman* v. *Pooley*, 1 Stark. 167; *Everingham* v. *Roundell*, 2 M. & R. 138; *Winn* v. *Patterson*, 9 Peters, 663; *Carey* v. *Fulmer*, 21 So. Rep. 752.

*Carmody & Leslie*, for respondent.

The stubs were primary evidence and original entries. *Anglo American P. & P. Co.* v. *Com.*, 31 Fed. Rep. 313; *Weaver* v. *Shipley*, 27 N. E. Rep. 146; *Gardner* v. *Eberhart*, 82 Ill. 310; 7 A. and E. Enc. L. 85. The stubs were in the nature of an admission against the defendant made by its authorized agent of a fact which was against the interest of the defendant at the time it was made. 1 Greenl. Ev. 115; *Butler* v. *Cornell*, 35 N. E. Rep. 766. The evidence of the entries on the stubs was competent as part of the *res gestæ*. *Chicago, etc. R. R. Co.* v. *Ingersoll*, 65 Ill. 399; *Rodgers* v. *Broadnox*, 27 Texas, 238; *Merrill* v. *Down*, 41 N. H. 72. A copy of a copy cannot be introduced until the original and copy are shown to be lost. *Joslyn* v. *Brockwell*, 13 N. Y. Supp. 311; *Williams* v. *Conger*, 8 Sup. Ct. Rep. 933; *Conner* v. *Conner*, 11 N. E. Rep. 848.

CORLISS, C. J.  Defendant seeks to reverse the judgment against it on the ground that incompetent evidence was admitted over its objection. The action is for the conversion of wheat sold to defendant by one Russell. Plaintiff recovered judgment. The wheat was the property of the plaintiff, but was stolen by Russell from his granary, and taken to defendant's elevator at Hatton, in this state. That some wheat was purchased by defendant of Russell is undisputed, but the exact number of bushels and the grade thereof is not proved unless the evidence which defendant attacks as incompetent is in fact legal evidence as against the defendant. The agent of the defendant, who was the one who purchased this grain, testified as follows as to the custom of the defen-

dant in making entries on the delivery of grain at its elevators: "It was my custom, at the time this wheat was bought, to make out in some sort of a little book a wheat ticket and stub attached to it; then tear it in two, and deliver the wheat ticket, or cancel it if the wheat was sold, and leave the stub in the book. These are both made at the same time, and one is practically a copy of the other; and when the wheat is stored I deliver the part called the ticket to the one storing the wheat, and the other part, called the stub, I keep. If the wheat is sold, the ticket is destroyed, and marked 'Paid,' and the stub is still left there. These stubs and wheat tickets were made each day as fast as wheat was received. This was the first and original memorandum made by me in each case, and kept on file until the close of the season's work. Do not know whether these particular ones were in my handwriting. Some may have been made by the second man. When I was away for any reason he would receive the wheat, and mark the stubs for it. These stubs show the grade of wheat, the price, the number of bushels, and from whom purchased. What is called the stub is a part of the check book, and the stub is used as a memorandum to make the reports from after the day's business. These reports include the amount of the business done during the day, and the amount of wheat received and stored. When a ticket was issued, we always made out the stub first. We kept the stub, and delivered the ticket to the person who delivered the wheat. The stubs were used afterwards to make the entries, and to keep a record as to the purchase of wheat." Entries relating to the transaction with Russell were made by defendant's agent in the usual course of business in the stubs and in the wheat tickets, showing the number of bushels, the grade, the person from whom purchased, and the price. A few days after the wheat was delivered at the elevator, plaintiff, who had learned of the theft, called on defendant's agent at Hatton,—the one to whom the grain had been delivered,—and inquired about the same. It is uncontroverted that the agent examined the stubs kept by him as agent, and plaintiff testified under objection that

he looked at the entries in the stubs, and that they showed that Russell had sold to defendant 548 bushels of No. 1 Northern wheat for 80 cents a bushel. It is conceded that, if this evidence was competent, the judgment must be affirmed. We cannot see how it can be said to be incompetent. The contention is that the wheat tickets were the best evidence, and that the stubs were only secondary evidence, and that plaintiff was permitted to prove by parol the contents of these papers, which themselves were only secondary evidence. But plaintiff notified the defendant to produce on the trial its books and entries relating to this transaction, and the defendant stated in the form of an affidavit that they had all been destroyed in the course of business. Conceding all that defendant's counsel claims, it is still true that the evidence was admissible. The best evidence on his theory, *i. e.* the wheat tickets, could not be produced, and this on account of the act of the defendant itself; and the secondary evidence on his theory, *i. e.* the stubs, were gone, and this, too owing to its own deliberate act of destruction thereof. What rule of law then prevented proof of the contents of the stubs, the best evidence which, under the circumstances, could be obtained? If a deed is lost, and the only copy thereof is also lost, evidence of the contents of such copy by one who has seen it is certainly the best evidence of which the case is susceptible. See *Joslyn* v. *Brockwell*, (Sup.) 13 N. Y. Supp. 311.

The cases cited by counsel for defendant are not in point. All they hold is that a copy taken from a copy is not competent when the original is in existence. The language of Judge Story in *Winn* v. *Patterson*, 9 Pet. 663–677, directly supports our view of the law: "We admit that the rule that a copy of a copy is not admissible evidence is correct in itself when properly understood, and limited to its true sense. The rule properly applies to cases where the copy is taken from a copy, the original still being in existence, and capable of being compared with it, for then it is a second remove from the original; or where it is a copy of a copy of a record, the record being in existence, * * * for then it

is also a second remove from a record. But it is quite a different question whether it applies to cases of secondary evidence where the original is lost, or the record of it is not, in law, deemed as high evidence as the original, or where the copy of a copy is the highest proof in existence." Moreover, it is evident from the testimony of the agent that the wheat tickets and stubs were practically duplicate entries, and each therefore, was an original entry.

Again it appears that the entries in the stubs were first made out, and that the wheat ticket was copied from it, and that the stubs were the memoranda from which the agent made up his report to the officers of the defendant at the home office. The other entries on the ticket were not properly entries made by defendant in its books at all. A wheat ticket embodies a contract between the warehouseman and the depositor of the grain, and is not an ordinary book entry, made by the depositary for its own convenience. Besides, the evidence was competent because it proved, after the loss of the entries themselves, a written declaration made by the defendant against its own interest, so far as plaintiff was concerned. Counsel for defendant concedes that the stubs themselves would be competent evidence against defendant, the tickets having been destroyed. The entries having been made by the agent in the ordinary course of business in relation to a transaction within the scope of his powers as agent, and at the very time the transaction took place, it was competent evidence as against the defendant because it was a part of the *res gestæ*, and not the narration by him of a past occurrence. The case is, therefore, the same as the case of a written declaration against interest made by an individual. That the contents of such a written declaration can be proved as against the individual after it is shown that the declaration itself has been destroyed can admit of no doubt. Certainly this should be the rule when the one making it has himself destroyed it. And in this case we have the additional circumstance that the defendant destroyed the written evidence which was prejudicial

to it after it knew that plaintiff was claiming that the wheat to which such evidence related was his, and that it would, therefore, be called on to pay him for it.

The judgment appealed from is affirmed.    All concur.