(26 Misc. Rep. 576.)

### PEOPLE ex rel. SCHOFIELD et al. v. SCHOONOVER et al.

### PEOPLE ex rel. WALLACE v. SAME.

(Supreme Court, Special Term, Orange County.  March, 1899.)

**1. TAXATION—ASSESSMENT ROLL—CLERK.**

Under Port Jervis Charter, § 25 (Laws 1896, c. 529), requiring the clerk to prepare the assessment roll, so far as possible, from the assessment of the preceding year, after its revision by the town assessors, he has no power to place on the roll an assessment which had been stricken therefrom by the assessors.

**2. SAME—ASSESSORS—TRUSTEES.**

Port Jervis Charter, § 29 (Laws 1896, c. 529), authorizing the trustees, where the town assessors have made an error or mistake in the valuation of property, to ascertain its true value, does not authorize them to change valuations made in good faith, but those only which are erroneous through oversight, neglect, etc.

**3. SAME.**

Port Jervis Charter, § 29 (Laws 1896, c. 529), authorizing the trustees to add to the assessment roll property improperly omitted, does not authorize them to add property purposely omitted by the assessors.

Certiorari by the people, on the relation of R. Ed. Schofield and others, against George Schoonover and others, as board of trustees of the village of Port Jervis, and the village of Port Jervis, and by the people, on the relation of Mary C. Wallace, as trustee, against the same.  Judgment for relators.

Wm. A. Parshall (R. Ed. Schofield, on the briefs), for relators.

John W. Lyon, for respondents.

HIRSCHBERG, J.  The existing charter of the village of Port Jervis was passed May 11, 1896, and is chapter 529 of the Laws of that year.  It made a radical change in the mode of tax assessments, by abolishing the board of village assessors, and substituting, in effect, the assessors of the town of Deer Park.  It charged the clerk of the village with the duty of preparing the village assessment roll, in the first instance, on the basis of the town roll, and delegated the duty of correcting and completing it to the board of trustees.  Section 25, subd. 2, provides:

"The clerk shall also prepare the assessment-roll of said village so far as possible, from the last preceding assessment-roll of the town of Deer Park after its final revision by the town assessors, following said town assessment-roll as to valuation of taxable property.  He shall submit the roll when so prepared, to the board of trustees within a time required by them, not later than the 1st day of May of each year, for revision by them as hereinafter provided," etc.

Section 28 provides:

"As soon as practicable after his appointment, or when directed by the board of trustees, the clerk shall prepare from the town assessment-roll of the preceding year a list of all inhabitants of said village liable under the statutes of the state of New York to work on highways, and of the real and personal property of all persons, corporations, companies and associations in said village liable to be assessed for highway labor and shall deliver the same to the board of trustees, who, after correcting and adding to the said list

as hereinafter provided, shall, on or before the first day of May in each year determine the amount of money necessary," etc.

Section 29 provides:

"The board of trustees shall have the exclusive power to correct the assessment-roll in respect to taxes imposed by virtue of this act in the same manner as boards of supervisors may by law correct the town rolls of their county; the said board shall also have exclusive power to add to said assessment-roll any property improperly omitted therefrom at a just and equitable valuation. Where the valuation of taxable property cannot be ascertained from the last assessment-roll of the town, or where the valuation of such property shall have increased or diminished since the last assessment-roll of the town, or an error, mistake or omission on the part of the town assessors shall have been made in a description or valuation of taxable property, the trustees shall ascertain the true value of the property to be taxed from the best evidence in their power, give notice to the persons interested and proceed in the same manner as the town assessors are required by law to proceed in the valuation of taxable property and hearing all grievances and a revision of the town assessment-roll."

It will be seen by these provisions that the duty of acting as assessors for the village is confided to and remains with the assessors of the town. In determining who are liable to be taxed, upon what property, and at what valuation, they act under the general law, and their determination is final and conclusive, unless reversed or modified judicially under the provisions of the tax law. The power of the board of trustees of the village is strictly confined to revision and correction. They can add property improperly omitted, can correct an error, mistake, or omission in either a description or valuation, and can ascertain, from the best evidence in their power, the true value of property to be taxed, where such value cannot be ascertained from the town roll, or such value has changed since the town roll was made. But the board have no power whatever to review the judgment or decisions of the town assessors, or to add to, take from, or in any other manner change any assessment lawfully made by that body. Their jurisdiction is expressly confined to the revision and correction of errors, mistakes, or omissions, excepting as to the question of valuation, and therein only where the town roll is silent on the subject, or there has been a change in the valuation since that roll was prepared. It may be assumed that the errors, mistakes, or omissions are those either of the village clerk or of the town assessors, and it is obvious that the duties of the clerk are merely clerical, and that he can neither add persons nor property in preparing the village roll in the first instance.

In case No. 1 the following facts are disclosed: The town assessors, having prepared the roll for the year 1896, gave the usual notice for review for the third Tuesday of August. Each of the relators was assessed on that roll for personal property, chiefly, if not solely, because of the ownership of certain bank stock. On the day named they all appeared before the assessors, complained of the assessments so made, respectively, and, after examining them under oath, the assessors decided the complaints in favor of the relators, and struck the assessments for personal property from the roll. In that shape the roll was finally revised and completed, and became the assessment roll for the town for the year 1896. In April, 1897, the village

clerk prepared the assessment roll of the village for the first time, under the amended charter. Instead of adopting the town roll, he appears to have exercised the function of assessor himself, and he accordingly placed upon the roll an assessment against each of the relators for the amounts of personal property respectively which the assessors had originally assessed, but had afterwards decided the relators were entitled to have stricken from the roll. This was done in obedience to a resolution passed by the board of trustees, but without notice to the parties, or any of them. Subsequently a notice, dated April 27, 1897, signed by the president and clerk of the village, was posted on the streets, and published in a newspaper, to the effect that the "trustees and acting assessors" of the village would meet on May 14th to hear complaints. On the day named, the relators appeared before the board of trustees, and complained of the action of the clerk, and filed sworn statements specifying the respect in which the proposed assessments were incorrect and illegal, but the board refused to correct the assessments or alter the roll. The board thereafter completed and filed the roll, and, within the statutory 15 days of the first publication of notice of such completion, a writ of certiorari was applied for to review their action. It is evident, from this recital of the law and the facts, that the assessments are absolutely void, and were made without jurisdiction. The clerk had no power whatever, excepting to prepare an assessment roll from the town roll of 1896. There is no hint or suggestion in the statute that he may add property not on that roll, or in any respect alter the assessed valuations. When the error was brought to the attention of the board of trustees, it was their duty to correct the roll by striking from it the illegal assessments assumed to have been made by the clerk. It is unnecessary to consider the extent of their powers under section 29, inasmuch as they have not acted under the authority therein conferred; but it is quite apparent that the case presents no question of the improper omission of property, or of error, mistake, or omission on the part of the town assessors, or change in value. The board could no more lawfully direct the unauthorized action of the clerk, or ratify it on grievance day, than they could themselves have then imposed the tax. That they could not do the latter, without notice, was decided in People v. Village of Port Jervis, 23 Misc. Rep. 317, 52 N. Y. Supp. 59, and cases cited. See, also, Hagner v. Hall, 10 App. Div. 581, 42 N. Y. Supp. 63. It is extremely doubtful whether they could have imposed the tax themselves, even on due notice of their intention, previously given to the parties interested; but it is clear the clerk could not impose the tax in the first instance, under any circumstances.

In case No. 2 it appears that Mary C. Wallace, as trustee under the will of Francis B. Wallace, deceased, is the owner of considerable real estate in Port Jervis. This was assessed by the town assessors, in the year 1897, at the sum of $43,100. The village clerk, in preparing the assessment roll in the spring of 1898, duly followed the valuations of the town assessors. The board of trustees, at a meeting held April 26, 1898, without notice, raised the valuations to the sum of $50,500, and thereafter gave public notice of a meeting to be held

May 17, 1898, to review the assessments on the complaint of any person conceiving himself aggrieved. The agents of Mrs. Wallace appeared at this meeting, and demanded that the assessment should be made to conform to the valuations established by the town assessors. The board reduced the assessment to $49,300. I cannot find from the evidence that any claim was made at this meeting, on the part of the board, that the value of the property had increased between the fixing of values by the town assessors and the action of the board of trustees; nor, as matter of fact, has there been such increase during the period named. Certainly, there is no evidence to justify the conclusion that, in these few months, the value had increased to the extent which would represent a difference of $6,200 in assessed valuation. The ground on which the increased assessment was made was the claim on the part of the board that the assessors had undervalued the property; in other words, that the conclusion at which the assessors had arrived, when determining the value of the property for the purposes of assessment, was an error or mistake, and that it was therefore within the province of the board to correct it. Assuming, however, that the assessors were mistaken and in error in deciding upon the value of the relator's property, it would clearly be an error of judgment, and not one which the board of trustees would be at liberty to review or correct. The error, mistake, or omission which the board of trustees may correct is the result of palpable oversight, inadvertence, or neglect, and not an erroneous conclusion, reached in good faith in the determination of an official duty. Nor does the evidence sustain the respondents' contention that the relator agreed to the increased assessment, or in any way waived or lost her rights to this judicial review of the action of the board of trustees.

In case No. 3 it appears that the relator, R. Ed. Schofield, was assessed by the town assessors, in 1897, in the sum of $500 for bank stock; that he appeared before them and obtained a reduction in his assessment to that extent, so that there was no assessment against him for personal property in the completed roll that year; that the village clerk followed the town assessment roll in this particular in preparing the village roll for 1898, but the board of trustees, without notice to the relator, restored the $500 assessment, and on the relator's complaint on grievance day refused to correct the error or strike the sum from the assessment roll. This action of the board is wholly without warrant or authority, under the provisions of the village charter. The omission of the relator's bank stock was the result of the official determination of the town assessors, and, as such, was not subject to review or correction by the board of trustees. Granting that the assessors were wrong, and that the relator had no right to the immunity which they accorded him, still his bank stock did not become "property improperly omitted" from the assessment roll, within the meaning of the village charter. It was intentionally omitted, as the result of an official judgment, and not improperly omitted by neglect, accident, or design. Had the assessors levied an assessment upon this stock and the village clerk failed to enter it upon his roll, it would have been improperly omitted, and could have been restored by the board of trustees, under proper proceedings.

It follows from the views herein expressed that the relators must prevail in all three cases, but I see no reason for imposing costs in any of them. Ordered accordingly.